## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRADFORD SKINNER,** | **CIVIL ACTION: 20-cv-595** |
| **VERSUS** | **JUDGE SHELLY D. DICK** |
| **LOUISIANA WORKFORCE, L.L.C.; SID J. GAUTREAUX, in his individual and official capacity; DEMARCUS BRAXTON; RUDOLPH HYDE; JOHN DOE** | **MAGISTRATE JUDGE SCOTT D. JOHNSON** |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants, Sheriff Sid J. Gautreaux, III, in his individual and official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), DeMarcus Braxton, and Rudolph Hyde ("Sheriff Defendants") move this Honorable Court to dismiss Plaintiff's claims against them made in his First Amended Complaint (Rec. Doc.19) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted for the reasons set forth herein. Plaintiff filed his original complaint on September 9, 2020.[1] Sheriff Defendants filed responsive pleadings to Plaintiff's original complaint in the form of a Motion to Dismiss on November 9, 2020.[2] Plaintiff filed a Consent Motion to File First Amended Complaint on November 12, 2020 in order to make two changes to the original Complaint: 1.) substitute the name "Luther Martin" for "John Doe;" and 2.) indicate that Plaintiff's excessive force claim is brought pursuant to the Fourth Amendment and/or the Eighth Amendment, rather than only pursuant to the Fourth Amendment as Plaintiff previously alleged in his original complaint.[3] The Court granted Plaintiff's

---

[1] Rec. Doc. 1
[2] Rec. Doc. 12-2
[3] Rec. Doc. 17

Consent Motion to File First Amended Complaint on November 17, 2020.[4] Thereafter, Plaintiff's First Amended Complaint was filed into the record.[5] Sheriff Defendants' original Motion to Dismiss is now moot, and thus, Sheriff Defendants are filing this Motion to Dismiss the claims Plaintiff asserts in his First Amended Complaint.

## I.    INTRODUCTION

Plaintiff, Bradford Skinner, is a convicted inmate who was being housed at the Work Release facility in East Baton Rouge Parish, located next to the East Baton Rouge Parish Prison. East Baton Rouge Parish Prison Deputies Demarcus Braxton and Rudolph Hyde were called over to the neighboring Work Release facility to help with an incident with inmate Skinner. Plaintiff alleges that Prison Deputies Braxton and Hyde used excessive force against him. Plaintiff brings claims against Prison Deputies Braxton and Hyde and Sheriff Gautreaux pursuant to Section 1983 and State law. Plaintiff names Louisiana Workforce, L.L.C. employee Luther Martin as a defendant, alleging that Defendant Martin participated in the unlawful use of force against Plaintiff.[6]

Plaintiff alleges that the defendants violated his rights under the Fourth and/or Eighth Amendment by using excessive force against him. However, the Fourth Amendment does not apply to Plaintiff's claims because the alleged excessive force did not take place during the arrest or apprehension of Plaintiff.  Deputy Braxton and Deputy Hyde were correctional officers at the East Baton Rouge Parish Prison responding to a disturbance by a convicted inmate at the neighboring East Baton Rouge Parish Work Release facility. Since Plaintiff was a convicted

---

[4] Rec. Doc. 18
[5] Rec. Doc. 19
[6] Rec. Doc. 19 ¶ 17

inmate incarcerated at the East Baton Rouge Parish Work Release facility at the time of the incident, his excessive force claims against the Louisiana Work Release facility guard (Martin) and East Baton Rouge Parish Prison guards (Braxton and Hyde) should be analyzed under the Eighth Amendment, rather than the Fourth Amendment.

Plaintiff has not stated an Eighth Amendment claim against Prison Deputies Hyde or Braxton because the alleged facts show that the force that they allegedly applied as security officers was in a good-faith effort to restore discipline at the Work Release facility and was not performed maliciously or sadistically to cause harm.

Plaintiff has not alleged facts to state a Section 1983 individual capacity claim against Sheriff Gautreaux because he has not alleged any personal involvement by Sheriff Gautreaux in the use of force against him.  Further, Deputy Hyde, Deputy Braxton and Sheriff Gautreaux are entitled to qualified immunity as to Plaintiff's individual capacity claims because Plaintiff has not pled sufficient facts as to their conduct such that every reasonable officer would have understood that their conduct violated Plaintiff's rights.

Plaintiff has failed to state a Section 1983 official capacity claim against Sheriff Gautreaux. Plaintiff asserts a *Monell* claim based on a single policy decision. However, Plaintiff does not allege any facts to show that Sheriff Gautreaux made any single policy decision that was the moving force behind the alleged constitutional violation. In addition, Plaintiff makes failure to train/supervise/discipline claims against Sheriff Gautreaux. However, Plaintiff's allegations are conclusory. Plaintiff does not allege how any training, supervision or discipline was defective. Plaintiff has not alleged facts to show deliberate indifference on the part of Sheriff Gautreaux. Finally, Plaintiff appears to be making an official capacity claims based on failure to implement a policy. Plaintiff does not allege how Sheriff Gautreaux's policies are deficient and Plaintiff fails

to allege any facts to show that Sheriff Gautreaux acted with deliberate indifference in failing to adopt or implement a policy.

Plaintiff makes analogous state law claims against the Sheriff Defendants. For similar reasons, Plaintiff's state law claims should also be dismissed with prejudice. Plaintiff fails to state a claim pursuant to Article 1 Section 5 of the Louisiana Constitution because Plaintiff's claims are not based on invasion of privacy, or unreasonable search or seizure. Plaintiff fails to state a state law claim for assault or battery because Plaintiff has not alleged sufficient facts to show that any use of force used in this case by Deputy Hyde and Deputy Braxton was not reasonable under the circumstances. Further, Plaintiff has not alleged that Sheriff Gautreaux used any force against him. Therefore, Plaintiff has not stated a claim against Sheriff Gautreaux pursuant to Article 1 Section 5 of the Louisiana Constitution or for assault and battery.

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges that at all times relevant to this litigation, Plaintiff, Bradford Skinner, was serving a sentence for non-violent drug crimes with the Louisiana Department of Safety and Corrections.[7] Plaintiff alleges that in April 2020, he was being housed at the work release facility in East Baton Rouge Parish, which is operated by Louisiana Workforce, L.L.C.[8] The work release facility where Plaintiff was housed in April 2020 is located next to the East Baton Rouge Parish Prison.[9]

Plaintiff alleges that on April 3, 2020, inmate Bradford Skinner informed a warden at the East Baton Rouge Work Release facility that he was experiencing chest pain, shortness of breath,

---

[7] Rec. Doc. 19 ¶19
[8] Rec. Doc. 19 ¶22
[9] Rec. Doc. 19 ¶28

and requested medical attention because he feared he might have contracted COVID-19.[10] Plaintiff alleges that he was given ingredients to make tea, but no medical care.[11]  Plaintiff alleges that on April 4, 2020, when Plaintiff was suffering from the same symptoms, he again asked for medical attention, which was denied.[12] Plaintiff alleges that he also reported his symptoms to Defendant Martin, a captain at the work release facility, who also dismissed his concerns.[13]

Plaintiff alleges that shortly after he requested medical attention from Work Release Defendant Martin, East Baton Rouge Sheriff's Officers from the neighboring East Baton Rouge Parish Prison, Defendants Demarcus Braxton and Randolph Hyde arrived at the work release facility.[14] Plaintiff alleges that he was placed in handcuffs by Work Release Defendant Martin.[15] Plaintiff alleges that he renewed his pleas for medical treatment, telling Defendants that he suffered from high blood pressure, was high-risk for contracting COVID-19  and needed to go to the hospital.[16] Plaintiff alleges that while he was in handcuffs, Prison Deputy Defendant Braxton sprayed him in the face with mace.[17] Plaintiff alleges that after being maced, he stood still on a walking ramp.[18] Plaintiff alleges that while he was standing still on the walking ramp, handcuffed, Prison Deputy Defendant Braxton grabbed him by his throat.[19] Plaintiff alleges that Defendants Braxton, Hyde and Martin all participated in forcibly pushing him up against a metal railing as they placed leg shackles on him.[20] Plaintiff alleges that simultaneously, Prison Deputy Defendant Braxton held him by the neck and bent him over the railing face first, pushing his head down with

---

[10] Rec. Doc. 19 ¶¶4,29
[11] Rec. Doc. 19 ¶¶4,30
[12] Rec. Doc. 19 ¶¶5,31
[13] Rec. Doc. 19 ¶32
[14] Rec. Doc. 19 ¶¶5,33
[15] Rec. Doc. 19 ¶34
[16] Rec. Doc. 19 ¶35
[17] Rec. Doc. 19 ¶36
[18] Rec. Doc. 19 ¶37
[19] Rec. Doc. 19 ¶39
[20] Rec. Doc. 19 ¶41

one hand.[21] Plaintiff alleges "Defendants" continued to apply pressure to Mr. Skinner until his arms dropped limp over the railing and he lost consciousness.[22] Plaintiff alleges that "Defendants" lifted Mr. Skinner so that his feet were not touching the ground, and then flung him on to the ramp.[23]

Plaintiff's allegations in his Complaint omit key facts that are set forth in the East Baton Rouge Parish Prison Disciplinary Report prepared by Demarcus Braxton and approved by Rudolph Hyde as his supervisor.[24] This Court may consider the attached Disciplinary Report in ruling on this motion to dismiss without converting it to a motion for summary judgment because it was referenced by Plaintiff in his Complaint.[25] The Disciplinary Report prepared by Corporal Demarcus Braxton provides that he and Lt. Rudolph Hyde received a call from the East Baton Rouge Parish Work Release Facility stating Inmate Skinner was attempting to walk off the compound. The report further provides that he and Hyde responded and observed Skinner sitting on the walking ramp of a trailer in handcuffs. The report provides that Corporal Braxton gave Skinner several verbal orders to stand up and that Skinner refused and stated several times "I have high blood pressure and the news said I'm at risk for Covid-19. I need to go to the hospital!" Lt. Hyde advised Skinner that he needed to stand up and walk to the Unit so a nurse at the East Baton Rouge Parish Prison could assess him to determine if he needed to be transported to a hospital. The report provides that Skinner refused and began to cough and spit at Corporal Braxton and Lt. Hyde, stating "back up or I [am] going to give you Corona!"  Corporal Braxton gave Skinner

---

[21] Rec. Doc. 19 ¶42
[22] Rec. Doc. 19 ¶44
[23] Rec. Doc. 19 ¶46
[24] See Disciplinary Report attached hereto as Exhibit 1.
[25] Rec. Doc. 19 ¶51. See *Innova Hosp. San Antonio, Ltd P'ship v. Blue Cross and Blue Shield of Geargia, Inc.,* 892 F. 3d 719, 726 (5th Cir. 2018) (citing *Wolcott v. Sebelius,* 635 F. 3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F. 3d 333, 338 (5th Cir. 2008)); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (citations omitted)

several verbal orders to stop spitting and coughing towards them. The report provides that Skinner refused and continued to spit and cough towards them. The report provides that Corporal Braxton administered a one to two second burst of subject control spray to the facial area of Skinner and that Skinner complied and stopped spitting and coughing towards them. The report provides that Corporal Braxton ordered Skinner to stand up and he refused his orders.  The report provides that Corporal Braxton and Lt. Hyde and a Captain from the Work Release Facility had to carry Skinner to the Unit and place him inside it.[26]

### III.    LAW AND ARGUMENT

#### A.  Applicable Standard

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[27]  "A legally sufficient complaint does not need to contain detailed factual allegations, but **it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."**[28]  In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[29]  A complaint is also insufficient if it merely "tenders 'naked assertions[s]' devoid of 'further factual enhancement.'"[30]  In order to satisfy the  plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[31]  "Furthermore, while the court must accept well-pleaded facts

---

[26] See Disciplinary Report attached hereto as Exhibit 1.
[27] *National Bi-Weekly Admin. Inc. v. Belo Corp.,* 512 F. 3d 137, 140 (5th Cir. 2007)
[28] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)
[29] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 667 F. 2d 1045 (5th Cir. 1982)
[30] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted)
[31] *Iqbal,* 556 U.S. at 678

as true, it will not 'strain to find inferences favorable to the plaintiff.'"[32] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[33]

When reviewing a motion to dismiss, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[34]

## B.  Federal Claims under Section 1983

Plaintiff asserts that the "Defendants" violated his Fourth and/or Eighth Amendment rights by using excessive force in restraining him.[35] Plaintiff asserts that this Court has jurisdiction over his claims under 42 U.S.C. Section 1983.[36] The Civil Rights Act of 1964, 42 U.S.C. Section 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[37]

It provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[38]

---

[32] *Taha V. William Marsh Rice Univ.,* 2012 WL 1576099 at *2 (S.D. Tex. 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions,* 365 F. 3d 353, 361 (5th Cir. 2004))

[33] *Twombly,* 550 U.S. 556 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))

[34] *Innova Hosp. San Antonio, Ltd P'ship v. Blue Cross and Blue Shield of Georgia, Inc.,* 892 F. 3d 719, 726 (5th Cir. 2018) (citing *Wolcott v. Sebelius,* 635 F. 3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F. 3d 333, 338 (5th Cir. 2008)); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (citations omitted)

[35] Rec. Doc. 19 ¶¶55-64

[36] Rec. Doc. 19 ¶10

[37] See *Moscary v. Ard,* 2018 WL 4608485 at *7 (M.D. La.2018) (citing *James v. Texas Collin County,* 535 F. 3d 365, 373 (5th Cir. 2008) (citation omitted)

[38] 42 U.S.C. Section 1983 (1996)

"Section 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[39]  To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[40] A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[41]

### C. Plaintiff fails to state a Section 1983 individual capacity claim against Sheriff Gautreaux, Rudolph Hyde or Demarcus Braxton and they are entitled to qualified immunity.

"[P]ersonal involvement is an essential element of a civil rights cause of action."[42]The Fifth Circuit has held that, in a claim asserted under Section 1983, "[a] plaintiff must establish that the defendant is either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[43]

A public official is entitled to qualified immunity unless the plaintiff demonstrates 1.) the defendant violated the plaintiff's constitutional rights, and 2.) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.[44] A Government official's conduct violates clearly established law when, at the time of the challenged

---

[39] *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *accord Graham v. Connor,* 490 U.S. 386, 393-94 (1989);*City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX,* 73 F. 3d 60, 63 (5th Cir. 1996), *cert. denied,* 519 U.S. 818 (1996); *Young v. City of Killeen,* 775 F. 2d 1349, 1352 (5th Cir. 1985).

[40] See *Blessing v. Freestone,* 250 U.S.329,340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1996); *Augustine v. Doe,* 740 F. 2d 322, 324-25 (5th Cir. Cir. 1984).

[41] See *Schultea v. Wood,* 47 F. 3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir. 1990), *cert. denied,* 498 U.S. 908 (1990); *Jacques v. Procunier,* 801 F. 2d 789, 793 (5th Cir. 1986); *Angels. City of Fairfield,* 793 F. 2d 737, 739 (5th Cir. 1986).

[42] *Thompson v. Steele,* 709 F. 2d 381, 382 (5th Cir. 1983)

[43] See *Moscary v. Ard,* 2018 WL 4608485 (M.D. La. 2018) (citing *James v. Texas Collin County,* 535 F. 3d 365, 373 (5th Cir. 2008) (citation omitted)

[44] *Porter v. Epps,* 659 F. 3d 440 (5th Cir. 2011)

conduct, "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[45]   To determine whether an official is entitled to qualified immunity, the court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted."[46]

The U.S. Supreme Court reiterated the longstanding principle that "clearly established law" should not be defined "at a high level of generality." Rather, "the clearly established law must be "particularized" to the facts of the case."[47] "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[48]"Existing precedent must have placed the statutory or constitutional question beyond debate."[49] "The dispositive question is whether the violative nature of *particular* conduct is clearly established. [That] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."[50] "'The pages of the *United States Reports* teem with warnings about the difficulty of' of showing that the law was clearly established."[51] "Doing so 'is especially difficult in excessive-force cases'… because 'the result depends very much on the facts of each case.'"[52] Even when officers act in unison, their conduct must be evaluated separately.[53]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendants' conduct as alleged in the complaint that is scrutinized for 'objective legal

---

[45] *Ashcroft v. Al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2083, 179 L. Ed. 1149 (2011)
[46] *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)
[47] *White v. Pauly,* 137 S. Ct. 548 (2017) (citations omitted)
[48] *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (per curium) (quoting *Brousseau v. Haagen,* 543 U.S. 194, 198, 125 S. Ct. 596 (2004) (per curium))
[49] *White v. Pauly,* 137 S. Ct. 548, 551 (2017)
[50] *McCoy v. Alamu,* 950 F. 3d 226, 233 (5th Cir. 2020) (citing *Mullenix v. Luna,* 577 U.S. 7, 136, S. CT. 305, 308, 193 L. Ed. 2nd 255 (2015) (per curiam) (citation and quotation marks omitted).
[51] *Id.* at 233 (citing *Morrow v. Meachum,* 917 F. 3d 870, 874 (5th Cir. 2019)))
[52] *Id* at 233 (citing *Morrow* at 876)
[53] *Pratt v. Harris Cnty., Tex.,* 822 F. 3d 174, 181 (5th Cir. 2016)

reasonableness.'"[54] Plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendants conduct at the time of the alleged acts."[55] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[56]

**1. Plaintiff has not alleged facts to support a claim against Sheriff Gautreaux in his individual capacity and he is entitled to qualified immunity.**

Plaintiff asserts that he is suing Sheriff Gautreaux in his individual capacity.[57] Plaintiff fails to allege sufficient facts as to Sheriff Gautreaux to satisfy the pleading requirement for a Section 1983 individual capacity claim and Sheriff Gautreaux is entitled to qualified immunity.

Plaintiff has failed to allege facts to show any personal involvement by Sheriff Gautreaux in the use of force against Plaintiff. Plaintiff does not even allege that Sheriff Gautreaux was at the scene of the incident at issue.  Instead, Plaintiff makes *in globo* conclusory allegations as to all defendants that "Defendants employed excessive and unreasonable force and caused excessive and unreasonable force to be employed" against him.[58] Plaintiff fails to allege any facts to show that Sheriff Gautreaux was personally involved in the use of force against him or that any actions by Sheriff Gautreaux were causally connected to the use of force.

Further, Sheriff Gautreaux is entitled to qualified immunity as to Plaintiff's individual capacity claims because Plaintiff has **not** pled sufficient facts as to Sheriff Gautreaux's conduct that every reasonable officer would have understood that Sheriff Gautreaux's conduct violated Plaintiff's rights.

**2. Plaintiff does not have a claim pursuant to the Fourth Amendment**

---

[54] *McClendon,* 305 F. 3d at 323 (quoting *Behring v. Pelletier,* 516 U.S. 299, 309 (1996)
[55] *Schultea v. Wood,* 47 F. 3d 1427, 1434 (5th Cir. 1995) (*en banc*)
[56] *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000)
[57] Rec. Doc. 19 ¶13
[58] Rec. Doc. 19 ¶57

Plaintiff claims that his rights under either or both the Fourth Amendment and Eighth Amendment were violated when "Defendants" employed excessive and unreasonable force against him.[59] However, the Fourth Amendment does not apply to Plaintiff's claims because the alleged excessive force did not take place during the arrest or apprehension of a free citizen. Plaintiff was a convicted inmate being housed at the East Baton Rouge Parish Work Release facility, a correctional facility, at the time of the incident. The Sheriff Defendants Braxton and Hyde were correctional officers at the adjacent East Baton Rouge Parish Prison. Plaintiff's excessive force claims should be examined only under the Eighth Amendment.

"In addressing an excessive force claim brought under Section 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."[60] The two primary sources of constitutional protection against physically abusive governmental conduct is the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments.[61]"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[62] "At one end of the timing spectrum are excessive force claims arising during the initial arrest or apprehension of a free citizen, which are governed by the Fourth Amendment. As explained by the Supreme Court in *Graham v. Connor,* when an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment,

---

[59] Rec. Doc.19 ¶57
[60] *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2nd 443 (1989) (citations omitted)
[61] *Id.*
[62] *Pena v. City of Rio Grande City, Texas,* 816 Fed. Appx. 966, 969 (5th Cir. 2020) citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2nd 443 (1989)

which guarantees citizens the right 'to be secure in their person.'"[63]  The Fifth Circuit in *Dawson* went on to explain that "[a]t the other end of the spectrum are excessive force claims arising during incarceration, after criminal prosecution is complete. A convicted inmate's excessive force claim is governed by the Eighth Amendment."[64] Courts have applied the Eighth Amendment to claims by a work-release inmate.[65]

In this case, Plaintiff was a convicted inmate incarcerated at the East Baton Rouge Work Release facility neighboring the East Baton Rouge Parish Prison at the time the incident in question took place.[66] Plaintiff admits that "[a]t all times relevant to this litigation, Plaintiff Bradford Skinner was serving a sentence for non-violent drug crimes with the Louisiana Department of Public Safety and Corrections."[67] Defendants Braxton and Hyde were correctional officers at the neighboring East Baton Rouge Parish Prison. Plaintiff's excessive force claims do **not** arise out of the arrest or apprehension of a free citizen. Rather, Plaintiff's excessive force claims arise during his incarceration after criminal prosecution was complete. Plaintiff's excessive force claims are brought by a convicted inmate against correctional officers who were making a good faith effort to maintain and restore discipline at a correctional facility.  Plaintiff's claims are governed solely by the Eighth Amendment and not the Fourth Amendment. Therefore, Plaintiff's Fourth Amendment claims should be dismissed with prejudice.

**3.   The Standard to be used under the Eighth Amendment**

---

[63] *Dawson v. Anderson County, Tex.,* 769 F. 3d 326,328 (5th Cir. 2014) (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)(quoting U.S. Const,. Amend. IV))

[64] *Id.* At 328

[65] See *Smith v. Southside Café,* 2010 WL 1037978, *4 (E.D. La. 2010) and cases cited therein; *Washington v. City of Shreveport,* 2006 WL 1778756, *4 (W.D. La. 2006) and cases cited therein.

[66] Rec. Doc. 19 ¶¶4,5

[67] Rec. Doc. 19 ¶19

"In evaluating excessive force claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment, the 'core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[68]  This standard focuses on "the detention facility official's subjective intent to punish."[69] To determine intent, the Fifth Circuit references "the well-known *Hudson* factors" to determine whether the use of force was constitutionally permissible.[70]  These factors are: "(1)the extent of the injury suffered, (2)  the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response."[71]  Further,  the Supreme Court has stated that prison disturbances "may require prison officials to act quickly and decisively."[72]

"'The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'"[73] An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.[74]

In the Fifth Circuit, a prisoner must have suffered at least some injury to have an excessive force claim under the Eighth Amendment.[75] Further, the Prison Litigation Reform Act (PLRA)

---

[68] *Cowart v. Erwin,* 837 F. 3d444, 452 (5th Cir. 2016) (quoting *Hudson v. McMillian,* 503 U.S. 1,6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992))
[69] *Id.* (Quoting *Valencia v. Wiggins,* 981 F. 2d 1440, 1449 (5th Cir. 1993))
[70] *Id.* At 452-453
[71] *Bourne v. Gunnels,* 921 F. 3d 484, 491
[72] *Hudson* 503 U.S. at 6
[73] *McCoy* at 233
[74] *Wilkins v. Gaddy,* 559 U.S. 34, 37-38 (2010)
[75] See *Abbott v. Babin,* 744 Fed. Appx. 854, 857(5th Cir. 2018) ("Although the Supreme Court in *Hudson v. McMilliam,* 503 U.S. 1, 5-9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) and *Wilkins v. Gaddy,* 559 U.S. 34, 37-39, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010), criticized courts of appeals for requiring 'some arbitrary quantity of injury" to maintain an excessive-force claim, the Court did not eliminate the required element of at least some harm or injury to maintain an Eighth Amendment claim."

provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury…"[76]

### 4. Plaintiff has not alleged facts to support a claim against Demarcus Braxton in his individual capacity and he is entitled to qualified immunity.

Plaintiff asserts that he is suing East Baton Rouge Parish Prison Deputy Demarcus Braxton in his individual capacity.[77]  Plaintiff fails to allege sufficient facts as to Deputy Braxton's conduct to satisfy the pleading requirement for a Section 1983 individual capacity claim for excessive force and Deputy Braxton is entitled to qualified immunity.  Plaintiff alleges that shortly after he requested medical attention form Work Release Defendant Martin, East Baton Rouge Parish Prison deputy Demarcus Braxton arrived.[78] Plaintiff alleges that while he was in handcuffs, Deputy Braxton sprayed him in the face with mace.[79] Plaintiff alleges that while he was standing still on the walking ramp, handcuffed, Deputy Braxton grabbed him by his throat.[80]Plaintiff alleges that Deputy Braxton, Hyde and Martin participated in forcibly pushing him up against a metal railing as they placed leg shackles on him.[81] Plaintiff alleges that Deputy Braxton held him by the neck and bent him over the railing face first, pushing his head down with one hand.[82] Plaintiff admits that the incident with Plaintiff at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance.[83] Plaintiff makes additional allegations as to all "Defendants." Plaintiff's *in globo* allegations as to all

---

[76] 42 U.S.C. Section 1997(e)
[77] Rec. Doc.19 ¶15
[78] Rec. Doc. 19 ¶33
[79] Rec. Doc. 19 ¶36
[80] Rec. Doc. 19 ¶39
[81] Rec. Doc. 19 ¶41
[82] Rec. Doc. 19 ¶42
[83] Rec. Doc. 19 ¶¶ 38 and 48

Defendants cannot be used to state a Section 1983 individual capacity claim against Deputy Braxton.

Plaintiff's allegations in his Complaint omit key facts that are set forth in the East Baton Rouge Parish Prison Disciplinary Report prepared by Corporal Braxton and approved by Lt. Hyde as his supervisor.[84] This Court may consider the attached Disciplinary Report in ruling on this motion to dismiss without converting it to a motion for summary judgment because it was referenced by Plaintiff in his Complaint.[85] The Disciplinary Report prepared by Corporal Braxton provides that he and Lt. Hyde received a call from the East Baton Rouge Parish Work Release Facility stating Inmate Skinner was attempting to walk off the compound.  The report further provides that Corporal Braxton and Lt. Hyde responded and observed Skinner sitting on the walking ramp of a trailer in handcuffs. The report provides that Corporal Braxton gave Skinner several verbal orders to stand up and that Skinner refused and stated several times "I have high blood pressure and the news said I'm at risk for Covid-19. I need to go to the hospital!" Lt. Hyde advised Skinner that he needed to stand up and walk to the Unit so a nurse at the Prison could assess him to determine if he needed to be transported to a hospital.  The report provides that Skinner refused and began to cough and spit at Corporal Braxton and Lt. Hyde, stating "back up or I [am] going to give you Corona!"  Corporal Braxton gave Skinner several verbal orders to stop spitting and coughing towards them. The report provides that Skinner refused and continued to spit and cough towards them. The report provides that Corporal Braxton administered a one to two second burst of subject control spray to the facial area of Skinner and that Skinner complied and stopped spitting and coughing towards them. The report provides that Corporal Braxton ordered Skinner to stand up and he refused his orders.  The report provides that Corporal Braxton

---

[84] See Disciplinary Report attached hereto as Exhibit 1.
[85] Rec. Doc. 19 ¶51

and Lt. Hyde and a Captain from the Work Release Facility had to carry Skinner to the Unit and place him inside it. [86]

The allegations in Plaintiff's Complaint and the additional facts set forth in the Disciplinary Report referenced by Plaintiff in his Complaint are insufficient to support a claim that Deputy Braxton used excessive force on Plaintiff in violation of the Eighth Amendment.  These alleged facts show that Corporal Braxton's actions were taken as a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm. The threat to the security at the corrections facility is evident by the fact that the disturbance that Plaintiff was causing at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance.[87] Even if the use of force by Defendant Braxton is analyzed under the Fourth Amendment reasonableness standard, Plaintiff's claims would be insufficient to state a cause of action.

First, Plaintiff alleges that Corporal Braxton used excessive force on him when he sprayed him with mace. Plaintiff fails to allege facts to show Corporal Braxton's subjective intent was to act maliciously and sadistically to cause harm rather than to maintain or restore order when he sprayed one or two burst of mace when the *Hudson* factors are considered. As to the first *Hudson* factor, Plaintiff does not specifically allege any injuries as a result of being sprayed by mace. The absence of an alleged physical injury also precludes Plaintiff's claim against Corporal Braxton in accordance with the PLRA.  As to the second, third and fourth factors, Plaintiff's attempt to escape from the Work Release Facility, his refusal to abide by orders to stand up and walk to the Unit at the Prison to see a Nurse, and his coughing and spitting on the deputies while stating that he was going to give them the corona virus, created a need for the use of force (the use of one to

---

[86] See Disciplinary Report attached hereto as Exhibit 1.
[87] Rec. Doc. 19 ¶¶ 38 and 48

two seconds burst of mace) and the relationship between the need for force and the amount of force used was appropriate to the threat reasonable perceived.  Further, as to the fifth factor, Corporal Braxton tempered the use of force by using only a short one to two second burst of spray.

Similarly, Plaintiff's allegations that Deputy Braxton pushed him against the metal railing, and held him by the neck and bent him over the railing face first, pushing his head down, taken together with the facts set forth in the Disciplinary Report are not sufficient to show that Corporal Braxton's subjective intent was to act maliciously and sadistically to cause harm rather than to maintain or restore order in light of the *Hudson* factors. Further, Plaintiff alleges that Deputy Braxton held him by the neck, which resulted in him losing consciousness.  Deputy Braxton denies these allegations. In any event, even if accepted as true for purposes of this motion, Plaintiff's allegations do not support a claim for excessive force under the Eighth Amendment. Plaintiff does not allege that he suffered significant injury.  Plaintiff alleges that he suffered from pain in his neck, throat, back and chest and that he had difficulty to breathing without coughing.[88] Skinner's refusal to follow orders to stand up so they could bring him to the East Baton Rouge Parish Prison to see a nurse,  resulted in a struggle which ended with the officers having to carry him to the unit to bring him to the East Baton Rouge Parish Prison. Clearly, some force was needed. The relationship between the need for force and the amount of force used by Deputy Braxton was appropriate. Further, the threat to the security at the corrections facility is evident by the fact that the disturbance that Plaintiff was causing at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance.[89] The allegations show that Deputy Braxton acted to temper the severity of his response. His struggle with Plaintiff

---

[88] Rec. Doc. 19 ¶ 54
[89] Rec. Doc. 19 ¶¶ 38 and 48

only lasted long enough to get Plaintiff to the unit.  As the Supreme Court has pointed out, prison disturbances "may require prison officials to act quickly and decisively."[90]

Further, Deputy Braxton is entitled to qualified immunity as to Plaintiff's individual capacity claims because Plaintiff has **not** pled sufficient facts as to Deputy Braxton's conduct that every reasonable officer would have understood that Deputy Braxton's conduct violated Plaintiff's rights. Officials may use chemical spray where "reasonably necessary to prevent riots or escapes or to subdue recalcitrant prisoners." [91] But they cannot do so "for the sole purpose of punishment or the infliction of pain."[92] The Court in *McCoy* held that since there was no need to subdue the inmate who was sprayed because it was another inmate who needed subduing, there was a constitutional violation.  However, the Fifth Circuit in *McCoy* also affirmed the dismissal of the claim based on qualified immunity because it was not beyond debate that an officer's single use of spray stepped over the *de minimis* line. Therefore, the law was not clearly established. [93]

Similarly, even if this Court were to find Deputy Braxton committed a constitutional violation, the law was not clearly established that Deputy Braxton's conduct was unconstitutional related to his spraying Plaintiff with chemical spray. Further, it was not clearly established that Deputy Braxton's conduct related to him holding him up against the rail, even allegedly by the neck when he would not stand up, was unconstitutional. Therefore, Deputy Braxton is entitled to qualified immunity and the claims against him should be dismissed with prejudice.

5. **Plaintiff has not alleged facts to support a claim against Rudolph Hyde in his individual capacity and he is entitled to qualified immunity.**

---

[90] *Hudson,* <u>503 U.S. at 6</u>
[91] *McCoy v. Alamu,* <u>950 F. 3d 226</u> (5th Cir. 2020) citing *Clemmons v. Greggs,* <u>509 F. 2d 1338, 1340</u> (5th Cir. 1975) citing *Clemmons v. Greggs,* <u>509 F. 2d 1338, 1340</u> (5th Cir. 1975)
[92] *Id.* citing *Soto v. Dickey,* <u>744 F. 2d 1260, 1270</u> (7th Cir. 1984)
[93] *Id.* at page 233

Plaintiff asserts that he is suing East Baton Rouge Parish Prison deputy Rudolph Hyde in his individual capacity only.[94] Plaintiff fails to allege sufficient facts as to Deputy Hyde's conduct to satisfy the pleading requirement for a Section 1983 individual capacity claim for excessive force and Deputy Hyde is entitled to qualified immunity.

The only specific factual allegations against Deputy Hyde are as follows: (1) "Shortly after Mr. Skinner requested medical attention from Defendant Walker, East Baton Rouge Parish Sheriff's Officers including Defendants Demarcus Braxton and [Rudolph] Hyde arrived;"[95] and (2) "Defendants Braxton, Hyde and Walker all participated in forcibly pushing Mr. Skinner up against a metal railing as they placed leg shackles on him."[96]

These allegations are insufficient to show that Deputy Hyde used excessive force on Plaintiff in violation of the Eighth Amendment. Even if the use of force by Defendant Hyde is analyzed under the Fourth Amendment reasonableness standard, Plaintiff's claims would be insufficient to state a cause of action.

Plaintiff has not alleged the extent of the injury, if any, he suffered as a result of Deputy Hyde's actions. Plaintiff has not alleged that Deputy Hyde used more than a *de minimis* amount of physical force on Plaintiff. Plaintiff has not alleged sufficient facts to show that the minimal force allegedly applied by Deputy Hyde (pushing him up against a metal railing as they placed leg shackles on him) was not a good faith effort to maintain or restore discipline. Plaintiff's alleged facts against Deputy Hyde do not show that he used any more force than was necessary to get Plaintiff to stand up and to put leg shackles on him so that they could take him to the unit to bring him to the East Baton Rouge Parish Prison to see a nurse. Based upon the alleged facts,

---

[94] Rec. <u>Doc. 19</u> ¶16 Plaintiff correctly names "Rudolph" Hyde in the caption but incorrectly names him as "Randolph" Hyde in ¶16
[95] Rec. <u>Doc. 19</u> ¶33
[96] Rec. <u>Doc. 19</u> ¶41

the relationship between the need for force and the amount of force used by Deputy Hyde was appropriate. As discussed above, the struggle was in the presence and view of other inmates who were filming and commenting on the disturbance at a correctional facility, presenting a real threat to the security at the Work Release facility, requiring the officers, including Deputy Hyde, to act quickly and decisively.[97]  Based on the facts alleged as to Deputy Hyde's conduct, Plaintiff has not stated an Eighth Amendment excessive force claim against Deputy Hyde.  Plaintiff's *in globo* allegations as to all Defendants cannot be used to state a Section 1983 individual capacity claim against Deputy Hyde.

Further, Deputy Hyde is entitled to qualified immunity as to Plaintiff's individual capacity claims because Plaintiff has **not** pled sufficient facts as to Deputy Hyde's conduct that every reasonable officer would have understood that Deputy Hyde's conduct violated Plaintiff's rights.

### D. Plaintiff fails to state a Section 1983 official capacity claim against Sheriff Gautreaux.

Plaintiff asserts that he is bringing *Monell* and failure to train and supervise claims against Sheriff Gautreaux in his official capacity.[98] Plaintiff's *Monell* claim appears to be based on a single policy decision of Sheriff Gautreaux.[99] Plaintiff also appears to be making a failure to discipline and failure to implement sufficient policies claims against Sheriff Gautreaux in his official capacity.[100]

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[101]  The claims against Sheriff

---

[97] Rec. Doc. 19 ¶¶38, 48
[98] Rec. Doc. 19 page 13 Count Four *Monell* and Failure to Train and Supervise
[99] See Rec. Doc. 19 ¶72 and cases cited in footnote 7
[100] Rec. Doc. 19 ¶¶74, 75,76, 77
[101] *Monell v. New York City Dep't of Soc. Serv. Of City of New York*, 436 U.S. 658, 690-91 n. 55 (1978)

Gautreaux in his official capacity are therefore claims against the East Baton Rouge Sheriff's Office, the agency that Sheriff Gautreaux represents.

To be successful in his official capacity claims, a Plaintiff "must show that the municipality has a policy or custom that caused his injury."[102]  Specifically, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom."[103] The Fifth Circuit has made it clear that "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing."[104]

To establish an "official policy," Plaintiff must allege either of the following:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policy making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[105]

To sustain a claim for municipal liability, the policymaker must have final policymaking authority.[106] "[W]hether a particular official has final policymaking authority is a question of *state*

---

[102] *Parm v. Spumante,* 513 F. 3d 135, 142 (5th Cir. 2007)

[103] *Valle v. City of Houston,* 613 F. 3d 536, 541-42 (5th Cir. 2010)

[104] *Ristow v. Hansen,* 719 Fed. Appx. 359 (5th Cir. 2018) citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys,* 675 F. 3d 849, 866-67 (5th Cir. 2012) (en banc)(alteration in original) (quoting *Becerra v. Asher,* 105 F. 3d 1042, 1048 (5th Cir. 1997)

[105] *Bennett v. City of Slidell,* 735 F. 2d 861, 862 (5th Cir. 1984)

[106] *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)

law."[107] In addition, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff."[108] "[A] single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity."[109] However, absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[110] Further, "[t]he single incident exception is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand."[111] In *Pembaur v. City of Cincinnati,* the U.S. Supreme Court considered "whether, and in what circumstances, a decision by municipal policymakers on a single occasion may satisfy" the requirements for successfully pleading *Monell* liability.[112] In *Pembaur,* a county prosecutor, acting as county's final decision maker, directed county deputies to forcibly enter plaintiff's place of business to serve *capiases* upon third persons. The Court found that where "[t]he Prosecutor made a considered decision based on his understanding of the law" and "[t]hat decision directly caused the violation of petitioner's rights," that decision could give rise to liability under Section 1983.[113] Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of *respondeat superior.*[114]

The Supreme Court has held that municipal policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to Section 1983

---

[107] *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S. Ct. 2701, 105 L. Ed. 2d 598 (1989) (internal citations omitted) (emphasis in original)
[108] *Piotrowski v. City of Houston,* 237 F. 3d 567, 579 (5ᵗʰ Cir. 2001)
[109] *Bennett v. Pippin,* 74 F. 3d 578, 586 (5ᵗʰ Cir. 1996) (internal quotations and citations omitted)
[110] *Id.*
[111] *Burge v. St. Tammany Par.,* 336 F. 3d 363, 373 (5ᵗʰ Cir. 2003)
[112] *Pembaur v. City of Cincinnati,* 475 U.S. 469, 471, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)
[113] *Id* at 484
[114] See *Bd. of Cnty. Commis of Bryan Cnty v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-91 (1978)

liability.[115]  The official's culpability for a deprivation of rights is at its most tenuous where a claim is failure to train or supervise.[116] A municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."[117] Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983."[118]

The Fifth Circuit has held that an official is liable under Section 1983 for a failure to train or supervise only where a plaintiff establishes that "(1) the official failed to train or supervise the officers involved; (2) there is a casual connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervised constituted deliberate indifference to the plaintiff's constitutional rights."[119]  The same elements applicable to a failure to train claim apply to claims based upon a failure to supervise or failure to discipline theories.[120]A complaint must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."[121] "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."[122]

To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a

---

[115] See *City of Canton v. Harris,* 489 U.S. 378, 380 (1989); *Bd. Of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 410-11 (1997).
[116] See *Connick v. Thompson,* 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011)
[117] *Canton,* 489 U.S. at 398
[118] *Id* at 389; *Connick v. Thompson,* 131 S. Ct. 1350
[119] *Burge v. St. Tammany Parish,* 336 F. 3d 363, 370 (5th Cir. 2003) (alteration omitted) (quoting *Thompson v. Upshur Cnty.,* 245 F. 3d 447, 459 (5th Cir. 2001)
[120] *E.G. v. Bond,* 2017 WL 129019 *3 (N.D. Tex. 2017) citing *Snow v. City of El Paso Tex.,* 501 F. Supp. 2d 826, 833 n. 5 (W. D. Tex. 2006)
[121] *Brown,* 520 U.S. at 404
[122] *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir.2005).

constitutional violation."[123] "[A] municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force."[124] "[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case."[125]"Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Likewise, liability under a Section 1983 failure to implement a policy requires a showing that the defendant acted with deliberate indifference.[126] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[127] "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'"[128] "A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, the plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of his decision."[129]

1. **Plaintiff fails to state an official capacity claim against Sheriff Gautreaux because Plaintiff has not alleged facts to support a constitutional violation by an employee of Sheriff Gautreaux.**

---

[123] *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted)
[124] *Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983)
[125] *Piotrowski v. City of Houston,* 237 F. 3d 567, 582 (5th Cir. 2001)
[126] *Lefebure v. Boeker,* 390 F. Supp. 3d 729, 755 (M.D. La. 2019) (citing *Porter v. Epps,* 659 F. 3d 440, 446 (5th Cir. 2011))
[127] *Id* at 755 (citing *Porter* at 446 (quoting *Rhyne v. Henderson Cnty.,* 973 F. 2nd 386, 392 (5th Cir. 1992)))
[128] *Id* at 755 (*citing Valle v. City of Houston,* 613 F. 3d 536, 542 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F. 3d 567, 579 (5th Cir. 2001) (quoting *Brown,* 520 U.S. at 407, 117 S. Ct. 1382))
[129] *Brown,* 520 U.S. 397, 411

If this Court finds, as asserted herein by Sheriff Defendants, that Deputy Braxton and Deputy Hyde did not violate Plaintiff's constitutional rights, then an essential element of municipal liability would be missing, an underlying constitutional violation by an employee of Sheriff Gautreaux, and Plaintiff's official capacity claims against Sheriff Gautreaux should be dismissed with prejudice for this reason alone.

### 2. Plaintiff fails to state an official capacity claim against Sheriff Gautreaux based on a single policy decision.

Plaintiff appears to base his Section 1983 official capacity *Monell* claim on the actions of Sheriff Gautreaux himself, a single policy decision. In support of his *Monell* claim, Plaintiff alleges "Policymakers for local governments can be liable under *Monell* when 'the action of the policymaker itself violated a constitutional right.'"[130] The cases cited by Plaintiff in support of this allegation involve a single policy decision by the final policymaker. In support of this claim, Plaintiff relies on the allegation that Sheriff Gautreaux is a final policymaker for East Baton Rouge Parish Sheriff's Office.[131] However, Plaintiff does not allege that Sheriff Gautreaux made any single policy decision that was the moving force behind the alleged constitutional violation. The alleged constitutional violation in this case is the alleged use of excessive force against Plaintiff, an inmate, by East Baton Rouge Sheriff Office ("EBRSO") prison deputies and Work Release Deputy Martin. Plaintiff fails to identify a "policy statement, ordinance, regulation, or decision" by Sheriff Gautreaux which caused this alleged constitutional violation. Absent an official policy,

---

[130] Rec. Doc. 19 ¶72 citing *Anderson v. Larpenter*, 16-13733 2017 WL 3064805 (E.D. La. July 18, 2017); citing *Burge v. Parish of St. Tammany*, 187 F. 3d 452, 471 (5th Cir. 1999); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Hampton Co. Nat. Sur., LLC v. Tunica county Miss.*, 543 F. 3d 221, 227 (5th Cir. 2008).
[131] Rec. Doc. 19 ¶72

any actions by deputies Braxton and Hyde do not render EBRSO, or in this case, Sheriff Gautreaux in his official capacity, liable under Section 1983.

### 3. Plaintiff fails to state an official capacity claim against Sheriff Gautreaux based on failure to train/discipline or supervise

In addition, Plaintiff makes a failure to train/supervise/discipline claim against Sheriff Gautreaux. Plaintiff claims that "Defendants had a duty…to adequately train, supervise and discipline all prison and jail personnel in order to prevent violations of inmates' rights."[132] Plaintiff makes the conclusory allegation, not supported by any facts, that "Defendants were deliberately indifferent to their duties to properly train, discipline and supervise the jail staff."[133] Further, Plaintiff alleges generally that "Defendants declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of officers and agents."[134] Finally, Plaintiff makes the conclusory allegation that "[a]s a result of Defendants' actions and omissions, including failure to train, supervise and discipline staff, Mr. Skinner's constitutional rights were violated."[135]

Plaintiff's failure to train/supervise/discipline claims are based on conclusory allegations with no factual support. Plaintiff makes no specific factual allegations about training whatsoever, much less how a particular training program was defective. Likewise, Plaintiff makes no specific factual allegation to support his failure to supervise/discipline claims. Plaintiff has not alleged facts to show that any failure to train/supervise/discipline was the moving force behind the alleged use of force. Plaintiff has not alleged facts to establish deliberate indifference on the part of Sheriff

---

[132] Rec. Doc. 19 ¶74
[133] Rec. Doc. 19 ¶75
[134] Rec. Doc.19 ¶76
[135] Rec. Doc. 19 ¶77

Gautreaux. Plaintiff has not alleged a pattern of similar incidents of lack of training/supervision/discipline.

### 4. Plaintiff fails to state an official capacity claim against Sheriff Gautreaux base on failure to implement a policy.

Similarly, Plaintiff has failed to state a claim for failure to implement a policy. Plaintiff alleges that Defendants declined to implement sufficient policies.[136]Plaintiff fails to allege how the Sheriff's policies are deficient and what policy he should have implemented. Plaintiff fails to allege any facts to show the Sheriff Gautreaux acted with deliberate indifference in failing to adopt or implement a policy.

### E. Plaintiff fails to state a claim against the Sheriff Defendants based on Article 1, Section 5 of the Louisiana Constitution.

Plaintiff alleges that "Defendants' actions in conducting and causing the seizing, detaining, and excessive force on Mr. Skinner as described above violated his rights under Article 1, Section 5 of Louisiana's constitution."[137]Article 1 Section 5 of the Louisiana Constitution provides "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."[138] Plaintiff does not state a claim pursuant to Article 1 Section 5 of the Louisiana Constitution because Plaintiff's claims are not based on invasion of privacy, or unreasonable search or seizure.

While the Louisiana Supreme Court has not recognized state constitutional claims based on excessive force, the Western District of Louisiana Federal District Court has noted that privacy

---

[136] Rec. Doc.19 ¶76
[137] Rec. Doc.19 ¶66
[138] Article 1, Section 5, of the Louisiana Constitution of 1974

principles embodied in the Fourth Amendment have been incorporated into Article I, Section 5 of the Louisiana Constitution. [139]

However, Plaintiff does not make claims based on invasion of privacy. As explained above, Plaintiff's claims should not be analyzed under the Fourth Amendment. Plaintiff does not allege any facts to show that he was unreasonably seized or detained. In fact, Plaintiff admits that "[a]t all times relevant to this litigation, Plaintiff Bradford Skinner was serving a sentence for non-violent drug crimes with the Louisiana Department of Public Safety and Corrections."[140] Plaintiff was an inmate at the East Baton Rouge Work Release facility, neighboring the East Baton Rouge Parish Prison.[141] Plaintiff was already a convicted inmate being housed at the East Baton Rouge Work Release facility, where the incident at issue in this suit took place. Deputy Braxton and Deputy Hyde were correctional officers at the East Baton Rouge Parish Prison responding to a disturbance by an inmate at the neighboring East Baton Rouge Parish Work Release facility.

Further, there is nothing in the cases out of the Western District to suggest that Article I, Section 5 of the Louisiana Constitution should be extended beyond Fourth Amendment excessive force claims based on unreasonable seizures to claims by a convicted inmate that excessive force was used on him in a correctional facility setting. As stated above, the Fourth Amendment is not applicable to Plaintiff's claims in this case because the force was not used during an arrest or seizure but while Plaintiff was housed in a correctional setting as a convicted inmate. Further, Plaintiff has not alleged that Sheriff Gautreaux used any force against him. Therefore, Plaintiff

---

[139] *Tucker v. City of Shreveport,* 2019 WL 961993 (W.D. La. 2/27/2019) citing *Shepherd v. City of Shreveport*, No. 14-2623, 2018 WL 1513679, at *10 (W.D. La. Mar. 27, 2018) (citing *Todd v. City of Natchitoches*, 238 F. Supp. 793, 798–99 (W.D. La. 2002), *appeal dismissed on other grounds*, 72 F. App'x 969).
[140] Rec. Doc. 19 ¶19
[141] Rec. Doc. 19 ¶¶4,5

fails to state a claim against the defendants for excessive force pursuant to Article 1 Section 5 of the Louisiana Constitution.

**F.  Plaintiff fails to state a State Law claim against the Sheriff Defendants based on Assault and Battery.**

Plaintiff alleges that Defendants' use of force against Bradford Skinner constituted assault and battery.[142]  Plaintiff alleges that "[i]t was an assault because it put Mr. Skinner in immediate apprehension of a non-consensual harmful touching."[143] Plaintiff alleges that "[i]t was a battery because Defendants completed a non-consensual harmful touching."[144]

Under Louisiana law, the use of force by law enforcement officers is scrutinized by considering the "reasonable force" standard established by La. C. Cr. P. art. 220.[145]  "Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment."[146] "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages."[147] The Court in *Penn* applied this test to plaintiff's state law claims for excessive force against a prison guard, Deputy Mayo, and found that given the circumstances and plaintiff's behavior at the jail, the force applied constituted ordinarily protected use of force. In *Penn,* the arresting police department alerted the officers at

---

[142] Rec. Doc. 19 ¶68
[143] Rec. Doc. 19 ¶69
[144] Rec. Doc. 19 ¶70
[145] *Penn v. St. Tammany Parish Sheriff's Office,* 2002-0893, (La App. 1st Cir. 4/2/03),843 So. 2d 1157
[146] *Id* at page 1161 citing *Kyle v. City of New Orleans,* 353 So. 2d 969, 973 (La. 1977).
[147] *Id* at 1161 citing *Ross v. Sheriff of Lafourche Parish,* 479 So. 2d 506, 511 (La. App. 1st Cir. 1985)

the Parish jail that the officers were in route with a combative prisoner. Deputy Mayo applied two bursts of the electric shield to control combative and resistive behavior after several unsuccessful vocal orders.

In this case, Plaintiff has not alleged sufficient facts to show that the use of force used in this case by Deputy Hyde and Deputy Braxton was not reasonable under the circumstances. The only specific allegations against Deputy Hyde is that he participated in forcibly pushing Mr. Skinner up against a metal railing as leg shackles were being placed on him.[148]  The alleged facts against Deputy Braxton, including those found in the referenced Disciplinary Report was that Mr. Skinner was attempting to escape, that he refused to stand up, and that he began to cough and spit at Deputies Braxton and Hyde stating that he was going to give them the corona virus. In response, Deputy Braxton gave several verbal commands to stop spitting and coughing, and that when he refused, Deputy Braxton administered a one to two second burst of control spray.[149]

Plaintiff alleges that while he was standing still on the walking ramp handcuffed, Defendant Braxton grabbed him by his throat. Plaintiff alleges that Deputy Braxton held him by the neck and bent him over the railing at which time he lost consciousness.[150] The disciplinary report provides that Corporal Braxton ordered Mr. Skinner to stand up and he refused his orders and that they had to carry him to the Unit and place him inside of it.[151]

Given the fact that Plaintiff was attempting to escape, he was spitting and coughing on Deputy Braxton and Deputy Hyde, that he was refusing to stand or walk with them, the force applied constituted ordinarily protected use of force. Plaintiff does not allege any facts to suggest

---

[148] Rec. Doc.19 ¶41
[149] See Disciplinary Report attached hereto as Exhibit 1
[150] Rec. Doc.19 ¶¶39,41,42,44,46
[151] See Disciplinary Report attached hereto as Exhibit 1

that Sheriff Gautreaux used any force against him. Plaintiff's State Law claims for assault and battery against the Sheriff Defendants should be dismissed with prejudice.

## IV.    CONCLUSION

For all of the foregoing reasons, Sheriff Defendants request that this Court dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

*s/ Catherine S. St. Pierre*
MARY G. ERLINGSON (#19562)
CATHERINE S. ST. PIERRE (#18419)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone: (225) 218-4446
Facsimile: (225) 246-2876

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2020 a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsel of record.

Baton Rouge, Louisiana, this 1st day of December 2020.

*/s/ Catherine St. Pierre*
Catherine S. St. Pierre