## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRADFORD SKINNER, )<br><br>Plaintiff, )<br>v. )<br><br>LOUISIANA WORKFORCE, L.L.C., *et al.* )<br>Defendants. ) | No. 20-cv-00595-SDD-SDJ |

### Opposition to EBRSO Defendants' Motion to Dismiss

This case is about how Sheriff's deputies pepper-sprayed Plaintiff Bradford Skinner in the face and then choked him to unconsciousness after he asked for medical care.

In R. Doc. 27, Sheriff's Defendants have moved to dismiss. Their motion relies in large part on a Disciplinary Report written by Defendant Braxton, providing Braxton's version of the incident. R. Doc. 27-2. The disciplinary report alleges that Plaintiff was "spitting and coughing," and so Defendant Braxton applied a two second burst of pepper spray into Plaintiff's "facial area" to get him to stop. Despite the obvious problem with using pepper spray to try to *stop* someone from coughing, Defendants contend that the disciplinary report weighs in favor of dismissal of Plaintiff's claims. They argue that Plaintiff's actions justified Defendants' use of force.

That is wrong. Rather than *exonerating* Defendants, the disciplinary report *inculpates* them with amazing clarity. That is because the report confirms that after Plaintiff was pepper-sprayed, he "**complied and stopped** spitting and coughing," and was secured with handcuffs and leg shackles.

At that point, Plaintiff was fully secured. The only resistance he offered thereafter was to refuse an order to stand up – *i.e*, only passive resistance. But it was *after* Plaintiff was secured and only passively resisting that Defendants took Skinner by the throat, pushed him against the rail, and choked him to unconsciousness.

In other words, the disciplinary report <u>confirms</u> that at the time of the choking, Plaintiff

1

was exhibiting only passive resistance. And Fifth Circuit law is clear: "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (emphasis added).

Accordingly, Plaintiff asks that Sheriff's Defendants' motion should be denied, with the sole exception of federal constitutional claims against Sheriff Gautreaux.

## I.      Standard of Review

Dismissal under Rule 12(b)(6) is disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff. *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*). Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim. *Id*. Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*., *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *Id*.

## II.      Analysis

**A.      Does the Fourth or Eighth Amendment Apply to Defendants' Use of Force?**

A threshold question for the purpose of this motion is what constitutional amendment is implicated by EBRSO Defendants' use of force.

When a plaintiff alleges that a government official has employed excessive force in violation of the Constitution, at least three constitutional amendments are potentially applicable – the Fourth, Eighth, and Fourteenth Amendments. The Fourth Amendment applies during the initial

arrest or apprehension of a person, as well as against parolees. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (initial arrest); *County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539 (2017) (parolee). The Fourteenth Amendment applies to pre-trial detainees. *Brothers v. Klevenhagen*, 28 F.3d 452, 455-56 (5th Cir. 1994). And the Eighth Amendment applies "whenever prison officials stand accused of using excessive physical force." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Here, Plaintiff resided at a work release program at the time of the use of force. A review of caselaw shows that some federal courts analyze excessive force in a work release context under the Fourth Amendment, and others under the Eighth Amendment. *Compare Page v. Bourchard*, 04-cv-73875, R. Doc. 38 (E.D. Mich., Sept. 20, 2005) (Fourth Amendment); *Lundy v. City of Pontiac*, 12-cv-10965-GAD-MAR, R. Doc. 90 (E.D. Mich., Sept. 25, 2013) (Fourth Amendment), *Gurule v. Colorado Springs Police Department*, 17-cv-826, R. Doc. 56, (D. Col., March 16, 2018) (Fourth Amendment), *with Jones v. Luzerne County Correctional Facility*, 10-cv-00359-JEJ, R. Doc. 12 (M.D. Penn., Aug. 23, 2010) (Eighth Amendment).

This case, however, presents an unusual fact pattern. On one hand, Plaintiff was a convict, suggesting the Eighth Amendment should apply. On the other hand, the Sheriff's Defendants who used force on him were not his "prison officials," as they did not work at the facility Plaintiff was held in. Plaintiff was held at the East Baton Rouge Work Release facility, a private facility run by Louisiana Workforce, L.L.C., distinct from the East Baton Rouge Jail. See First Amended Complaint, R. Doc. 19 ("FAC") at ¶ 20. The distinction between these facilities is reflected on the document provided by Defendants, R. Doc. 27-2. Defendant Braxton wrote Plaintiff up on a "Disciplinary Report" form, but "no action [was] taken" because Plaintiff was a "work release inmate" rather than in the custody of EBRSO.

In fact, Sheriff's Office defendants were responding to a "call" for service from the Louisiana Workforce facility. *See* R. Doc. 27-2 ("Cpl. Demarcus Braxton and Lt. Rudolph received a call from the East Baton Rouge Parish Work Release Facility.") Thus, at the time they

used force on Mr. Skinner, they were more closely analogous to officers responding to a call for service, and less analogous to prison guards. Under this reasoning, the Fourth Amendment ought to apply.

Defendant argues that it is obvious that Plaintiff's claims arise from the Eighth Amendment by virtue of the fact that he was not a "free citizen." R. Doc. 27-1 at 13. But Plaintiff was neither exactly free nor exactly incarcerated. As a work release detainee, he worked by day at a Wendy's fast-food restaurant, and returned to the facility to sleep at night. FAC at ¶ 23. In many ways, he was more akin to a parolee than an inmate. Like a parolee, he was a convict constructively in the custody of the state with many of his freedoms were limited, even though in other ways he could go about a normal life and have a job. And the Supreme Court has analyzed excessive force against parolees under the Fourth Amendment. *See County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539 (2017).

Undersigned counsel has not been able to find a case directly on point that addresses what constitutional amendment applies when a law enforcement officer (1) answers a call for service, (2) enters a private prison facility, and (3) uses force on a person therein. Perhaps the closest is *Gurule, supra*, in which a work release detainee failed to return to his facility, and officers from another law enforcement agency used force on him in the course of apprehending him. 17-cv-826, R. Doc. 56, (D. Col., March 16, 2018). The court there analyzed the force under the Fourth Amendment. *Id.*

Here, the fact that the EBRSO Defendants were not Plaintiff's jailors, but instead were answering a call for service, suggests that, like in *Gurule,* the Fourth Amendment provides the proper analytical framework.

The issue, however, need not be decided on this motion. That is because Plaintiff has alleged facts that would state a claim regardless of whether Defendants' use of force is analyzed under *either* the Fourth or Eighth Amendment.

**B.    Once Mr. Skinner was secured and exhibiting only passive resistance, clearly-established law holds that Defendants could not use substantial force on him, like choking him to unconsciousness.**

Long-established law draws a clear line between what officers may do when a suspect is exhibiting active resistance and what they may do when the person is exhibiting only passive resistance. In the Fourth Amendment context, the Fifth Circuit has set out a bright-line rule: "where an individual's conduct amounts to mere 'passive resistance,' **use of force is not justified**." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (emphasis added), *citing Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (determining the plaintiff's initial refusals to follow a police officer's instructions amounted to, "at most, passive resistance" and did not justify the officers use of a "'half spear' takedown" against the plaintiff); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (the plaintiff's refusal to get out of her car before her husband arrived on the scene constituted passive resistance).

In the Fifth Circuit, this rule has been clearly established for at least two decades. *See Trammell, supra,* 868 F.3d. at 343 ("*Goodson* gave officers 'fair warning' that their conduct was unconstitutional"), *citing Goodson v. City of Corpus Christi*, 202 F. 3d 730 (5th Cir. 2000).

The Fifth Circuit's rule is also mirrored in other circuits. *See, e.g., Smith v. City of Troy, Ohio*, 874 F. 3d 938 (6th Cir. 2017) ("It was well-established [in 2014] that a non-violent, non-resisting, or only passively resisting suspect who is not under arrest has a right to be free from an officer's use of force."); *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (noting that while active resistance to an officer's command can justify use of a taser, passive resistance—or no resistance at all—does not justify such use of force); *Miller v. Gonzalez,* 761 F.3d 822, 829 (7th Cir. 2014) ("the law is clearly established that police officers cannot use 'significant' force on suspects who are only passively resisting arrest"), *citing Phillips v. Community Ins. Corp*., 678 F.3d 513, 525 (7th Cir. 2012) (collecting cases).

This is true even when a suspect is *not* handcuffed and leg shackled. *See Smith, supra,* 874

F.3d at 945 (denying qualified immunity for the act of forcibly handcuffing a passively-resisting suspect).

The case law is also clear that <u>prior</u> active resistance will not justify force used <u>after</u> the suspect stops actively resisting. *Joseph v. Bartlett*, 2020 WL 6817823 (5th Cir. 2020) ("even if Joseph failed to comply and struggled against the officers at certain points throughout the encounter, that resistance did not justify force indefinitely. . . . For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance."); *Waterman v Batton*, 393 F. 3d 471, 481 (4th Cir. 2005) ("force justified at the beginning of an encounter is not justified **even seconds later** if the justification for the initial force has been eliminated") (emphasis added); *Miller, supra,* 761 F.3d at 829 ("This prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior — including resisting arrest, threatening officer safety, or potentially carrying a weapon."), *Lamont v New Jersey*,  637 F. 3d 177, 184 (3d Cir. 2011) ("Even where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished.")

The passive/active resistance issue is incorporated into excessive force analysis under the Eighth Amendment as well. The question of resistance is incorporated into second *Hudson* factor (the "need for the application of force") and the fourth factor ("the threat reasonably perceived by the responsible officials"). *See Hudson v. McMillian,* 503 U.S. 1 (1992), *see also Peterson v. Meisner,* 15-cv-49-jdp (W.D. Wis., Nov. 2, 2017) (inmate's "undisputed conduct—the disruptive behavior, disrespectful and insulting comments, and noncompliance with orders—would justify discipline, though not necessarily the amount of force used in this case."), *citing Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) ("Willful non-compliance is not the same as actively resisting but instead a passive resistance requiring the minimal use of force.")

Thus, whether a person is actively resisting at the time of the use of force is relevant to

both Fourth and Eighth Amendment analysis. The distinction between the two is that while the Fourth Amendment does not allow *any* force to overcome passive resistance, the Eighth Amendment allows "minimal" use of force.

Here, the FAC alleges facts showing that Defendants used far more than "minimal" force on him after he ceased actively resisting. Both the FAC and Defendants' Disciplinary Report agree that after Braxton pepper-sprayed Plaintiff, Plaintiff exhibited only passive resistance. The FAC says that after Defendants "maced Mr. Skinner," they "restrained his hands and legs in shackles. And while Mr. Skinner was exhibiting only passive resistance, three officers forcibly pressed Mr. Skinner up against a metal railing until he was choked into unconsciousness." FAC at ¶ 6. Defendants' Disciplinary Report agrees: it says that after Braxton maced Skinner "in the facial area", Plaintiff "complied and stopped spitting and coughing towards us. I ordered Skinner to stand up he refused my orders. [*Sic.*]" R. Doc. 27-2. *Cf. Goodwin, supra*, 781 F.3d at 326 ("noncompliance alone does not indicate active resistance").

Taken together, the First Amended Complaint and the Disciplinary Report tell a consistent story:

      (1)      Skinner was handcuffed; (R. Doc. 27-2; FAC ¶ 34)

      (2)      Skinner was coughing and spitting; (R. Doc. 27-2)

      (3)      Braxton pepper-sprayed him "in the facial area" to get him to stop; (*id*.; FAC ¶ 6)

      (4)      Skinner stopped coughing and spitting; (R. Doc. 27-2; FAC ¶¶ 6, 37, 60)

      (5)      Skinner's legs were shackled; (FAC ¶ 41)

      (6)      Skinner refused to comply with a verbal order to stand up; (R. Doc. 27-2)

      (7)      Defendants *then* grabbed Skinner and choked him to unconsciousness. (R. Doc. 27-2, FAC ¶¶ 42-46).

Defendants also repeatedly point out that after the use of force, they "had to carry [Skinner] to the Unit and place him inside of it." R. Doc. 27-1 at 7, 17, 18, 31. Clearly they think this fact weighs in their favor. But as made clear in the FAC, the reason they had to carry

Skinner is that *they had choked him to unconsciousness.* FAC ¶¶ 2, 6, 49. It is astonishingly brazen of Defendants to choke a man to the point of total black-out, and then try to use the fact that he could not walk against him.

This Court need not rely only on the parties' description of the incident, however. As Defendants note, documents referenced in a complaint may be reviewed in assessing a motion to dismiss. R. Doc. 27-1 at 6, *citing Innova Hosp. San Antonio, Ltd P'ship v. Blue Cross and Blue Shield*, 892 F. 3d 719, 726 (5th Cir. 2018). This Court may therefore watch the short, one-minute video described in the complaint. It is available online at:

https://www.youtube.com/watch?v=3ZS2JkyQhEA&feature=emb_title&ab_channel=TheAppeal

Use of force under these circumstances is exactly what the Fifth Circuit has forbid. Last month, the Fifth Circuit summarized the law in *Joseph v. Bartlett, supra*,

> Force must be reduced once a suspect has been subdued. Notably, "subdued" does not mean "handcuffed." If the suspect lacks any means of evading custody—for example, by being pinned to the ground by multiple police officers—force is not justified. . . . For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance.

In summary, after being pepper-sprayed in the face, Bradford Skinner was subdued. He was no longer coughing or spitting. He was unarmed, shackled by the hands and feet, surrounded by three officers, and cornered against a rail *inside* a secure facility. Unless he had the power to fly, he thus lacked "any means of evading custody" – and force was therefore not justified under either the Fourth or Eighth Amendment. *See Darden v. City of Ft. Worth, Texas*, 880 F. 3d 722, 733 (5th Cir. 2018) ("viewing the facts in the light most favorable to Darden, Officer Romero's actions — choking, punching, and kicking [not actively resisting suspect] — were objectively unreasonable in light of clearly established law at the time of the incident.")

For this reason, the Disciplinary Report Defendants provide as an attachment is fatal to their motion, not exonerating.

**C.** **Braxton's choice to pepper-spray Plaintiff in the face to stop him from coughing states a claim for excessive force in that it was fundamentally irrational: pepper spray *causes* coughing; it does not prevent it.**

Sheriff's Defendants argue also that Defendant Braxton's choice to mace Plaintiff in the face was justified. According to Defendant Braxton, he "administered a one to two second burst of subject control spray to the facial area of Skinner" to stop Skinner from "coughing and spitting." R. Doc. 27-2.

Plaintiff, however, has stated a claim for excessive force because pepper-spraying someone in the face to stop them from coughing and spitting is fundamentally irrational. That is because pepper spray causes a person to cough and spit. *See Scott v. Hanson*, 04-cv-00460-DEW-MLH, R. Doc. 24 R&R at *3 (W.D. La., Feb. 21, 2006) ("Dr. Hearn testifies that she is familiar with the effects of mace, pepper spray and other chemical agents used at the prison. When a person is sprayed with a 'minimal amount of mace,' the effects, including coughing, tearing of the eyes, redness and burning of the eyes and skin."); *Willis v. Catahoula Correctional Center*, 09-cv-01510-DDD-JDK, R. Doc. 14 R&R at *4 (W.D. La., May 14, 2010) (plaintiff "was exposed to chemical mace which caused him to cough."); *Lindsey v. Boughton,* 17-cv-52-jdp (W.D. Wis. Aug. 10, 2018) ("Direct exposure to pepper spray causes temporary discomfort, blurred vision, watery eyes, swelling, coughing, and shallow breathing."); *State v. Wallace*, 43 S.W.3d 398 (Mo. App. 2001) ("officer testified at trial the normal reaction to pepper spray included eye irritation, nasal discharge, and coughing."); *Henry v. City of Flint*, Case No. 19-1801 (6th Cir. 2020) (plaintiff "began spitting and wheezing to try to clear the pepper spray"); *State v. Bowshier*, 853 N.E.2d 1210, 1214 ("On cross-examination, Holt, who had undergone pepper spraying as part of his training, acknowledged that a person who is pepper sprayed 'might start spitting because of the effects of the pepper spray in their mouth.'")

Accordingly, under Eight Amendment analysis, Braxton's choice to use pepper spray to stop coughing and spitting is plausibly excessive force because it completely fails the third *Hudson*

factor: the relationship between the need for force and the force used. *See Bourne v. Gunnels*, 921 F. 3d 484, 491 (5th Cir. 2019) (listing *Hudson* factors). It is as if a prison guard claimed it was a legitimate use of force to push an inmate *down* the stairs so as to keep him safely at the *top* of the stairs; there is a complete logical mismatch between the goal and the method used.

Thus, this Court held in *O'Quin v. Gautreaux*, 14-98-BAJ-SCR (M.D. La., Mar. 31, 2015) that allegations that officers "physically attacked a nude, unarmed O'Quin in his cell with taser shields and mace because O'Quin was spitting on trustees" was held to "sufficiently allege[] conduct on a level that does not seem to be reasonably related to managing the jail and could plausibly be considered excessive." *See also Guy v. Metro. Gov't of Nashville & Davidson Cnty.*, 14-cv-01585 (M.D. Tenn., June 8, 2016) ("An officer's use of a chemical spray on a pretrial detainee who is disobeying direct orders can be a constitutional violation.") The same result should hold here.

Defendants also argue that "absence of an alleged physical injury also precludes Plaintiff's claim against Corporal Braxton in accordance with the PLRA." R. Doc. 27-1 at 17. This argument is flatly contradicted by the complaint, which explicitly alleges physical injury. *See* R. Doc. 19 at ¶ 54 (As a result of the excessive force Defendants used against Mr. Skinner, he suffered injuries including pain in his neck, throat, back, and chest, difficulty breathing without coughing, and emotional distress."); ¶ 63 ("As a result of Defendants' excessive force, Mr. Skinner suffered physical injuries and emotional harm"); ¶ 64 ("Defendants' misconduct was the cause of Plaintiffs' injuries.")

Thus, Plaintiff has alleged facts supporting each of the five factors of the *Hudson* test for excessive force under the Eighth Amendment:

(1) The extent of the injury suffered: Plaintiff alleges injuries including pain in his neck, throat, back, and chest, and difficulty breathing without coughing. FAC ¶ 54.

(2) The need for the application of force: There was little to no need, as Plaintiff was handcuffed, shackled, surrounded by officers, and exhibiting only passive resistance. FAC ¶¶ 35-54.

(3) <u>The relationship between that need and the amount of force used</u>: There was a huge mismatch between both instances of force used against Plaintiff. Defendants pepper-sprayed him to stop him from coughing, and choked him to unconsciousness to get him to comply with an order to stand. R. Doc. 27-2; FAC ¶¶ 35-54.

(4) <u>The threat reasonably perceived by the responsible officials</u>. The Disciplinary Report confirms after the pepper spray, there was no perceived threat: it says "Skinner complied and stopped spitting and coughing towards us." R. Doc. 27-2.

(5) <u>Any efforts made to temper the severity of a forceful response</u>. The record is lacking in any efforts to temper the severity of response. Defendants' disciplinary report offers no alternative methods used to obtain compliance. R. Doc. 27-2. And after Plaintiff was choked to unconsciousness and laying on the ground, Defendants did not even take basic steps to temper the impact of their force such as checking to see if he was breathing or checking for a pulse. FAC ¶ 49. Nor does the video show that any Defendant attempted to wipe the pepper-spray from Plaintiff's face or flush his eyes out, even though he had just been pepper-sprayed "in the facial area."

Defendants argue that "Corporal Braxton's actions were taken as a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." R. Doc. 27-1 at 17. Perhaps so. But Braxton's subjective intent cannot be presumed in a motion to dismiss, where all facts must be construed in the light most favorable to plaintiff. *See Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*). Defendants' motion should be denied.

**D.    Defendant Hyde is liable both for his direct actions and also under a bystander liability theory.**

In their brief, Defendants seek to distinguish between the liability of Braxton and Hyde, and note that the worst allegations of the complaint focus on Defendant Braxton. That is true. Braxton was the officer who pepper-sprayed Skinner in the face, grabbed him by the throat, and forced his head down over the metal rail. Defendant Hyde, however, was a full participant every step of the way. He pushed Skinner against the metal rail, facilitating Braxton's act of choking Skinner to unconsciousness. FAC ¶ 41. He is thus liable for his own use of force, as well as his choice not to intervene to prevent Braxton's actions.

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v.*

*Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted). The key elements of establishing a claim for bystander liability are proximity, ability to intervene, and acquiescence to use of force. *Imani v. Baton Rouge,* 17-cv-0439, R. Doc. 226 at *7 (M.D. La. Aug. 14, 2020) (summarizing current state of bystander liability law).

Here, Hyde's proximity (a few feet away), ability to intervene (the pepper-spraying-plus-choking sequence lasted minutes), and failure to act (he was an active participant rather than an objector), pleads a claim for bystander liability for Hyde. Hyde presents exactly the fact pattern – holding a suspect while another officer uses excessive force against them – that typically survives a motion to dismiss for bystander liability. *See Taplette v. LeBlanc*, No. 18-853-EWD (CONSENT), 2019 WL 1560444 (M.D. La. Apr. 10, 2019) (motion to dismiss denied when plaintiff alleged "that after being restrained, he was 'then forcefully thrown to the ground and beaten'" and that officer placed his knee "in the side of [plaintiff's] face, with his full force and weight" while other officers continued to beat plaintiff.

Accordingly, the motion to dismiss with regard to Hyde should be dismissed.

**E.      Plaintiff accedes to the dismissal of Sheriff Gautreaux for constitutional claims.**

Plaintiff does not object to the dismissal of constitutional claims against Sheriff Gautreaux, retaining him in the lawsuit only for *respondeat superior* liability for state law claims.

**F.      Plaintiff has sufficiently plead the state law torts of assault and battery, as every *Penn* factor weighs in his favor.**

Citing *Penn v. St. Tammany Parish Sheriff's Office*, 2002-0893, (La App. 1st Cir. 4/2/03),843 So. 2d 1157, Defendants lay out the factors they believe should be applied to determine whether they assaulted and battered Plaintiff. R. Doc. 27-1 at 30. Each of these factors weighs in favor of Plaintiff having stated a claim for assault and battery.

(1) The known character of the arrestee: Plaintiff was a work-release detainee serving a serving a sentence for non-violent drug crimes. FAC ¶ 19. He was trusted enough to work in the community at restaurants in Baton Rouge. FAC ¶ 23. He was asking for medical care, and allegedly "spitting and coughing." FAC ¶ 35, R. Doc. 27-2. Once pepper-spray was used he "complied" and ceased coughing. R. Doc. 27-2.

(2) <u>The risks and dangers faced by the officer</u>. At the time of the pepper-spraying, there was minimal danger as Plaintiff was only alleged to be spitting and coughing, not using violence. At the time Braxton choked Skinner to unconsciousness, there was *no* danger because Skinner was handcuffed, shackled, surrounded, and only passively resisting. R. Doc. 27-2, FAC ¶¶ 35-54.

(3) <u>The nature of the offense or behavior involved</u>. At the time of the pepper-spraying, Defendants allege that Skinner was coughing and spitting. R. Doc. 27-2. Construing this in the light most favorable to plaintiff, coughing and spitting was more likely a manifestation of Skinner's need for medical care, rather than an attempt at assault. The behavior that precipitated choking Skinner to unconsciousness, however, was his simple passive resistance to a command to stand up. *Id.*

(4) <u>The chance of escape if the particular means are not employed</u>. There was no chance of escape. Plaintiff was handcuffed, leg-shackled, surrounded by officers, cornered against a rail, and in a secure facility. FAC ¶¶ 35-54.

(5) <u>The existence of alternative methods of arrest or subduing the arrestee</u>. At the time of pepper-spraying, all the officers needed to do was to back up and engage with Mr. Skinner regarding his need for medical care. At the time of the choking, Mr. Skinner *was subdued* – he was handcuffed, shackled, surrounded, and only passively resisting. R. Doc. 27-2, FAC ¶¶ 35-54.

(6) <u>The physical strength, size and weaponry of the officers as compared to that of the arrestee</u>. The officers outnumbered Mr. Skinner three-to-one, were larger than Mr. Skinner, and were armed with at least pepper-spray. *Id.*

(7) <u>The exigencies of the moment</u>. There were no exigencies. Once pepper-spray was used Skinner "complied" and ceased coughing. R. Doc. 27-2. He was handcuffed, shackled, and surrounded. *Id.*

Because all of the *Penn* factors weigh in Plaintiff's favor, the motion should be denied.

## III.    CONCLUSION

For the reasons above, Plaintiff asks that this Court deny EBRSO Defendants' motion to dismiss, exception for dismissal of federal constitutional claims against Sheriff Gautreaux.

Respectfully submitted,

*/s/ William Most*
William Most, No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
williammost@gmail.com

*Attorney for Plaintiff*