# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRADFORD SKINNER                                                CIVIL ACTION

VERSUS                                                          20-595-SDD-SDJ

SID J. GAUTREAUX, III, ET AL.

### RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, Sheriff's Deputy Demarcus Braxton ("Braxton"), East Baton Rouge Sheriff Sid J. Gautreaux ("Gautreaux"), and Sheriff's Deputy Rudolph Hyde ("Hyde") ("the Sheriff Defendants"). Plaintiff Bradford Skinner ("Plaintiff") filed an *Opposition*,[2] to which the Sheriff Defendants filed a *Reply*.[3] For the following reasons, the Sheriff Defendants' *Motion*[4] shall be granted in part and deferred in part.

## I.    BACKGROUND

This is an excessive force case. Plaintiff was an inmate at the East Baton Rouge Work Release facility in April 2020.[5] Defendant Louisiana Workforce, LLC runs that facility.[6] Plaintiff worked at assigned locations such as a Wendy's restaurant and Cou'Yon's BBQ.[7] Plaintiff alleges that on April 3, 2020, while in the East Baton Rouge Work Release facility, he requested medical attention because he was concerned that he had contracted COVID-19; he was given ingredients to make tea, but no medical care.[8]

---

[1] Rec. Doc. No. 27.
[2] Rec. Doc. No. 28.
[3] Rec. Doc. No. 33.
[4] Rec. Doc. No. 27.
[5] Rec. Doc. No. 19, p. 1.
[6] *Id*. at 2–3.
[7] *Id*. at 4.
[8] *Id*.

The following day while in the facility, he requested medical attention again, and his request was denied.[9] Deputies Braxton and Hyde responded from East Baton Rouge Parish Prison with Luther Martin ("Martin"), a Louisiana Workforce, LLC employee, providing assistance.[10] According to Plaintiff, Martin handcuffed Plaintiff, then Braxton maced Plaintiff in the face, and then Braxton forcibly bent Plaintiff over a railing until he lost consciousness, in that order.[11] Plaintiff admits in his *Opposition* that prior to being maced, he was coughing and spitting at the officers.[12] After Plaintiff lost consciousness, the officers grabbed Plaintiff's legs and arms and carried him away.[13] Braxton authored a disciplinary report charging Plaintiff with "Aggravated Disobedience."[14]

Plaintiff asserts the following claims against all Defendants: an excessive force claim under the Fourth or Eighth Amendment, as appropriate; a claim for the violation of Article I, Section 5 of the Louisiana Constitution; and state law claims for assault and battery.[15] Plaintiff asserts a claim for municipal liability under *Monell*,[16] a failure to train and supervise claim, and a claim for vicarious liability against Sheriff Gautreaux and Louisiana Workforce, LLC.[17] Plaintiff seeks declaratory relief, compensatory damages, special damages, costs and attorney's fees.[18] The Sheriff Defendants assert qualified immunity.

---

[9] *Id*.
[10] *Id.* at 5.
[11] *Id*. at 4–8.
[12] Rec. Doc. No. 28, p. 8.
[13] Rec. Doc. No. 19, p. 10.
[14] *Id*. at 11.
[15] *Id*. at 12–13.
[16] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).
[17] Rec. Doc. No. 19, p. 13–14.
[18] *Id*. at 14.

## II.   LAW AND ANALYSIS

### A.   Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has

---

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal citations omitted) (hereinafter "*Iqbal*").
[24] *Id*.

67604

acted unlawfully."[25] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[26] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[27]

The Court finds it necessary to succinctly state what it will and will not consider in resolving this *Motion*. First, the Court will not consider the alleged video of the incident. The Court will, however, view the purported images from the video that are incorporated into the *First Amended Complaint*.

Second, the Sheriff Defendants urge the Court to consider the disciplinary report that Braxton prepared after the encounter with Plaintiff.[28] The Sheriff Defendants correctly note that the Court may consider it because Plaintiff references it in his *First Amended Complaint*.[29] However, the Sheriff Defendants introduce the disciplinary report in order to disprove Plaintiff's rendition of the facts.[30] At this stage, where Plaintiff's allegations are taken as true, the Sheriff Defendants' evidence that tends to discredit those allegations should not be considered. This is especially true where, as here, it would require weighing the Sheriff Defendants' rendition of what occurred against Plaintiff's.

---

[25] *Id.*
[26] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[27] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[28] Rec. Doc. No. 27-1, p. 6.
[29] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[30] Rec. Doc. No. 27-1, p. 6. "Plaintiff's allegations in his Complaint omit key facts that are set forth in the East Baton Rouge Prison Disciplinary Report prepared by Demarcus Braxton and approved by Rudolph Hyde as his supervisor."

Third, "'it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.'"[31] Therefore, the Court will not consider Plaintiff's bystander liability claim against Hyde which is not pled in the original *Complaint* or the *First Amended Complaint*.

Finally, Plaintiff proffers a timeline in his *Opposition* that cites the *First Amended Complaint* and the disciplinary report.[32] This timeline differs from the one Plaintiff pleads in the *First Amended Complaint* in one critical way: in between Plaintiff being handcuffed and Plaintiff being maced, Plaintiff now admits that he was coughing and spitting at people.[33] This admission casts a large shadow over the above axiom because, on the one hand, Plaintiff cannot amend his *First Amended Complaint* via his *Opposition*, but, on the other hand, this admission is germane to the qualified immunity defense asserted by the Sheriff Defendants.

The Court will assume for the purposes of this *Motion* that Plaintiff was coughing and spitting at people before being maced. Qualified immunity is more than immunity from liability—it is immunity from suit.[34] As such, it should be decided at the earliest possible stage of the litigation.[35] Although Plaintiff's admission regarding coughing and spitting is not in the *First Amended Complaint*, its importance, combined with the Supreme Court's instruction that entitlement to qualified immunity must be decided posthaste, convinces the Court that the admission should be considered now.

---

[31] *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).
[32] Rec. Doc. No. 28, p. 7.
[33] *Id*.
[34] *Hunter v. Bryant*, 502 U.S. 224, 226, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
[35] *Id*.

Plaintiff does not object to the dismissal of the constitutional claims against Sheriff Gautreaux.[36] Plaintiff retains him in this lawsuit only for *respondeat superior* liability for the state law claims.[37] Because the Court declines to address Plaintiff's state law claims at this procedural posture for reasons provided below, the *Motion* is unopposed and therefore granted as to Sheriff Gautreaux.

### B.  Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[38] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[39]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[40]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United

---

[36] Rec. Doc. No. 28, p. 12.
[37] *Id*.
[38] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[39] 42 U.S.C. § 1983.
[40] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

States.[41] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[42]

As an initial matter, the parties disagree as to whether the Fourth Amendment or Eighth Amendment applies. "At one end of the timing spectrum are excessive force claims arising during the initial arrest or apprehension of a free citizen, which are governed by the Fourth Amendment…. At the other end of spectrum are excessive force claims arising during incarceration, after the criminal prosecution is complete. A convicted inmate's excessive force claim is governed by the Eighth Amendment."[43]

The Sheriff Defendants argue that, because Plaintiff was a convicted inmate at the time the force was used, the Eight Amendment applies.[44] Plaintiff argues that this is a unique case because: several of the responding officers were not his prison officials—they were called in to assist with a situation; Plaintiff was "neither exactly free nor exactly incarcerated" since he left the facility to work during the day; and the facility was privately run.[45] Plaintiff argues that these facts trigger the Fourth Amendment.

The Court concludes that the Eighth Amendment applies. Although Plaintiff could leave the facility to go to work, and during those times, enjoyed more freedom than an incarcerated person, he was nonetheless detained pursuant to a judgment of conviction. The context in which the force was used is critical. The force at issue occurred in the facility and was in response to a prison disturbance. Plaintiff's ability to exercise freedoms

---

[41] See *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[42] See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).
[43] *Dawson v. Anderson Cty., Tex.*, 769 F.3d 326, 328 (5th Cir. 2014) (Haynes, J. concurring).
[44] Rec. Doc. No. 27-1, p. 13.
[45] Rec. Doc. No. 28, p. 3–4.

67604

at other times does not change the fact that Plaintiff was under the care, custody, and control of the East Baton Rouge Sheriff, through Louisiana Workforce, LLC. Hypothetically, had Plaintiff been arrested while out on work-release, that seizure would be like any other seizure of a free person by the police, and in that case the Fourth Amendment would apply. But that is not the case here, so the Eighth Amendment applies.[46]

### C. Qualified Immunity

Public officials are entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law, and (2) if so, the defendant's conduct was objectively unreasonable in light of clearly established law at the time of that conduct.[47] Therefore, to survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts, which, taken as true, show that the defendant violated his constitutional rights which were clearly established at the time of the violation. If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated.[48] The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law.[49]

---

[46] *Jones v. Luzerne Correctional Facility*, 2010 WL 3338835 (M.D. Pa. 2010).
[47] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011); *Hart v. Tex. Dep't of Criminal Justice*, 106 F. App'x 244, 248 (5th Cir. 2004).
[48] *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987).
[49] *Id*. at 639.

**D.     Excessive Force**

"In evaluating excessive force claims under the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[50] Although "'[t]he focus of this standard is on the detention facility official's subjective intent to punish,' intent is determined by reference to the well-known *Hudson* factors—'the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'"[51] "The amount of force used must be more than *de minimis*, provided that the use of force is not of a sort repugnant to the conscience of mankind."[52] "[C]ourts frequently [find] constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[53]

Plaintiff names all Defendants in the excessive force count.[54] Plaintiff failed to oppose dismissal of his constitutional claims against Gautreaux. For the purposes of this *Ruling*, that leaves only Braxton and Hyde as potentially liable for excessive force under § 1983.

The Court will consider the Sheriff Defendants' allegedly excessive use of force in two parts: when Braxton maced Plaintiff and when Braxton bent Plaintiff over the metal railing until he lost consciousness. As to the first part, Plaintiff alleges that he requested medical attention from Martin, and Martin handcuffed him.[55] Plaintiff admits that, while

---

[50] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).
[51] *Id.* at 453 (cleaned up).
[52] *Id.* (cleaned up).
[53] *Id.* at 454.
[54] Rec. Doc. No. 19, p. 11–12.
[55] Rec. Doc. No. 19, p. 6.

handcuffed, he began coughing and spitting.[56] Plaintiff alleges that Braxton then sprayed him in the face with mace.[57]

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis.[58]

Braxton's actions did not violate Plaintiff's constitutional rights. According to the facts as alleged and admitted in Plaintiff's *Opposition*, Braxton used the pepper spray in order to induce Plaintiff to comply with his orders to stop spitting and coughing at people. Each of the *Hudson* factors weighs against a finding of excessive force. Plaintiff's alleged injuries are mostly derived from the events after the macing; Plaintiff admits that he was coughing and spitting at people; a brief spray of mace is not disproportionate to the need to get Plaintiff to comply with orders to stop spitting and coughing; Braxton perceived non-compliance as well as the threat of exposure to Plaintiff's bodily fluids; and the duration of the spray was brief.

Plaintiff argues that macing someone to force them to stop spitting and coughing is "fundamentally irrational" because macing someone causes them to spit and cough.[59] As such, argues Plaintiff, Baxton's actions fail the third *Hudson* factor because the force used exacerbated the reason the force was necessary.[60]

Plaintiff misunderstands the objective of the *Hudson* inquiry. The purpose of the *Hudson* factors is to determine whether the defendant acted with a subjective intent to

---

[56] Rec. Doc. No. 28, p. 7.
[57] Rec. Doc. No. 19, p. 6
[58] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[59] Rec. Doc. No. 28, p. 9.
[60] *Id.* at 10.

punish rather than a good faith intent to restore order in the prison.[61] Therefore, the fact that the mace may have caused Plaintiff to continue to cough and spit is irrelevant because the spray was used to restore order in the prison and force Plaintiff to stop coughing and spitting *at* people. The third *Hudson* factor focuses on the proportionality between the force needed and the force used; it does not focus on the effectiveness of the use of force.

The use of mace is not forbidden by the United States Constitution,[62] and Plaintiff has not alleged facts from which the Court could conclude that Braxton plausibly sprayed Plaintiff "maliciously and sadistically to cause harm."[63] The Court finds that, per Plaintiff's allegations, up to this point in the encounter, Braxton had not violated Plaintiff's constitutional rights. Plaintiff does not allege that Hyde did anything but arrive on the scene at this point, so Hyde also did not violate Plaintiff's constitutional rights.

The second part of the events giving rise to this suit begins with Braxton allegedly grabbing Plaintiff by the throat while the two stand on a walking ramp.[64] Next, "Braxton, Hyde, and Martin all participated in forcibly pushing [Plaintiff] up against a metal railing as they placed leg shackles on him."[65] Meanwhile, Braxton allegedly held Plaintiff by the neck and bent him over the railing face-first, pushing his head down with one hand.[66] Plaintiff alleges that he was pinned against the metal railing with his head forced down until he lost consciousness.[67] After Plaintiff lost consciousness and was allegedly shackled, "[the Sheriff] Defendants lifted [Plaintiff] so that his feet were not touching the

---

[61] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).
[62] *Stone v. Damons*, No. 06-61087, 252 F. App'x 581, 582 (5th Cir. 2007).
[63] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).
[64] Rec. Doc. No. 19, p. 7.
[65] *Id*.
[66] *Id*.
[67] *Id*. at 8.

67604

ground, and then flung him onto the ramp."[68] Plaintiff avers that the video shows that none of the Sheriff Defendants checked him for a pulse, and they picked him up by "his legs and arms and carried him off the walking ramp."[69] The question before the Court is therefore: did Braxton and Hyde violate Plaintiff's constitutional rights when they engaged in these behaviors while attempting to shackle Plaintiff's legs, and if so, were those constitutional rights clearly established such that a reasonable officer would have known that what they were doing violated those rights?

The only allegations as to Hyde are that he pushed Plaintiff up against the railing while putting leg shackles on him, and that he helped carry Plaintiff off the walking ramp after he lost consciousness. This is a *de minimis* use of force that does not amount to a constitutional violation as it is not "repugnant to the conscience of mankind."[70] Therefore, under the facts as alleged, Hyde did not violate Plaintiff's constitutional rights, and the excessive force claim against him is dismissed.

The allegations against Braxton are more fleshed-out. However, Plaintiff has failed to provide sufficient factual allegations and jurisprudential support to allow an inference that Braxton's actions violated Plaintiff's clearly established rights. Plaintiff must point the Court to authority that would have put Braxton on notice that what he did violated the law.[71] Plaintiff provides an adequate clearly established law analysis as to his Fourth Amendment claim, however, when the time comes to provide Eighth Amendment authority, Plaintiff merely describes why Braxton's actions were unconstitutional in

---

[68] *Id*. at 9.
[69] *Id*. at 10.
[70] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).
[71] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020).

narrative form.[72] "Plaintiff[']s narrative argument is of no import of a pre-existing or precedential case."[73] Plaintiff provides no "binding Supreme Court or Fifth Circuit precedent to anchor [the Court's] review of whether a similarly situated officer violated a constitutional right acting under similar circumstances."[74] Because Plaintiff has failed to provide the Court with any applicable Eighth Amendment cases, the Court cannot continue its analysis, and Plaintiff has not defeated Braxton's qualified immunity defense.[75] Therefore, based solely on Plaintiff's failure to adequately allege and support a clearly established right in order to defeat qualified immunity, and without regard to the substantive viability of Plaintiff's excessive force claim, Plaintiff's excessive force claim against Braxton is dismissed.

### E.    Vicarious Liability

Sheriff Gautreaux may not be held liable under a vicarious liability theory for the actions of its employees that violate § 1983. Municipal entities, such as the East Baton Rouge Sheriff's Office may only be held liable under *Monell* and its progeny, and Plaintiff has waived that claim against Gautreaux.[76] As to vicarious liability on the state law claims, the Court defers ruling on those claims for the reasons provided below.

### F.    State Law Claims

In addition to his claims under § 1983, Plaintiff also brings claims against all the Sheriff Defendants under state law.[77] Because the Court finds that Plaintiff has failed to allege facts sufficient to support his federal law claims, the Court will defer consideration

---

[72] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020).
[73] *Id*.
[74] *Id*.
[75] *Id*.
[76] *Monnell*, 436 US 658, 691; Rec. Doc. No. 28, p. 12.
[77] Rec. Doc. No. 19, p. 13–14.

of these state law claims pending Plaintiff's ability to establish federal claims based on the current procedural posture.

## III.  CONCLUSION

The Sheriff Defendants' *Motion to Dismiss*[78] is granted in part, without prejudice, and deferred in part. Plaintiff will have 21 days from the date of this *Ruling* to amend the *First Amended Complaint* to cure the deficiencies set forth above. Plaintiff shall also file a Rule 7(a) *Response* to the qualified immunity defense asserted by the Sheriff Defendants. Failure to comply with this deadline will result in a dismissal with prejudice as to the Sheriff Defendants.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 20, 2021</u>.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[78] Rec. Doc. No. 27.

67604