UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**BRADFORD SKINNER**

**VERSUS**

**LOUISIANA WORKFORCE, L.L.C.;
SID J. GAUTREAUX, in his individual and
official capacity; DEMARCUS BRAXTON;
RUDOLPH HYDE; LUTHER MARTIN;**

**CIVIL ACTION**

**NO. 20-cv-00595-SDD-SDJ**

## SECOND AMENDED COMPLAINT

NOW INTO COURT, through counsel, comes Bradford Skinner, who states:

### I. INTRODUCTION

1. **"That man can't breathe!"**

2. This case is about how three officers maced an inmate, shackled him, and then choked him against a rail until he was unconscious – after he asked for COVID-19 medical care.

3. In the beginning of April 2020, as the COVID-19 pandemic was spiking in Louisiana and raging through local jails, East Baton Rouge Work Release inmate Bradford Skinner began experiencing symptoms of the novel deadly virus.

4. On April 3, 2020, inmate Bradford Skinner informed a warden at the East Baton Rouge Work Release facility that he was experiencing chest pain and shortness of breath, and requested medical attention because he feared he might have contracted COVID-19. Mr. Skinner was given ingredients to make tea, but no medical attention or care.

5. On April 4, 2020, when Mr. Skinner was still suffering from the same symptoms, he again asked for medical attention and again was denied. Officers from the neighboring East Baton Rouge Parish Jail arrived at the work release facility.

1

6. East Baton Rouge Parish Sheriff's Officers maced Mr. Skinner. They restrained his hands and legs in shackles. And while Mr. Skinner was exhibiting only passive resistance, three officers forcibly pressed Mr. Skinner up against a metal railing until he was choked into unconsciousness.

7. A portion of these events – including the officers choking Mr. Skinner – was captured on video.

8. It is well-established in the law that "passive resistance does not authorize violent force on an officer's part."[1]

9. The way Defendants treated Mr. Skinner violated his constitutional rights. Mr. Skinner files this lawsuit to hold Defendants accountable for their misconduct and the harm he suffered as a result.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiff's claims of federal rights violations, enforceable under the Fourteenth Amendment and 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

11. The venue is proper in the Middle District of Louisiana under 28 U.S.C. §1391(b)(2). The events giving rise to the claim occurred in the Middle District of Louisiana.

## III. PARTIES

12. <u>Plaintiff Bradford Skinner</u> is a person of the full age of majority maintaining a residence in New Orleans, LA. At all times relevant to this litigation, he was incarcerated in East Baton Rouge Parish.

13. <u>Defendant Sid J. Gautreaux III</u> is the Sheriff of East Baton Rouge Parish. He is sued in his official capacity.

14. <u>Defendant Louisiana Workforce, L.L.C.</u> is a Louisiana licensed L.L.C. It is a private prison

---

[1] *Tucker v. City of Shreveport*, No. 17-1485, 2019 U.S. Dist. LEXIS 32486, at *26 (W.D. La. Feb. 27, 2019) (citing *Deville v. Marcantel*, 567 F.3d 156, 167-168 (5th Cir. 2009)).

company that operates the East Baton Rouge Work Release facility.

15.  <u>Defendant Demarcus Braxton</u> is an officer of the East Baton Rouge Parish Sheriff's Office. He is sued in his individual capacity only.

16.  <u>Defendant Randolph Hyde</u> is an officer of the East Baton Rouge Parish Sheriff's Office. He is sued in his individual capacity only.

17.  <u>Defendant Luther Martin</u> (formerly identified as John Doe) is an employee of Louisiana Workforce, L.L.C. assigned to the East Baton Rouge Work Release facility. His image is:



Defendant Martin participated in the unlawful use of force against Mr. Skinner and was captured on video participating in choking Mr. Skinner. Defendant Martin is sued only in his individual capacity.

### IV. FACTS

**A.    Bradford Skinner Was a Serving a State Sentence at a Private Work Release Facility in East Baton Rouge Parish.**

18.  Plaintiff realleges and incorporates each and every foregoing paragraph.

19.  At all times relevant to this litigation, Plaintiff Bradford Skinner was serving a sentence for non-violent drug crimes with the Louisiana Department of Public Safety and Corrections.

20.  The Louisiana Department of Public Safety and Corrections contracts with parish sheriff's offices to operate work release facilities using state inmates under the authority of the Department of Public Safety and Corrections. In turn, some sheriff's offices contract with private companies to operate the work release facility on their behalf.

21. Louisiana Workforce, L.L.C. is one such company, operating work release facilities in numerous parishes including East Baton Rouge.

22. In April 2020, Mr. Skinner was being housed at the work release facility in East Baton Rouge Parish, which is operated by Louisiana Workforce, L.L.C.

23. While at the work release facility, Mr. Skinner performed work at assigned locations including Wendy's restaurant and Cou'Yon's BBQ.

**B.    In the Beginning of April 2020 as Cases of COVID-19 Began Spiking Rapidly in Louisiana, Bradford Skinner Sought Medical Attention for Symptoms of COVID-19.**

24. The first cases of COVID-19 were documented in Louisiana in mid-March 2020. Cases rapidly multiplied and hit an early peak at the beginning of April:



Fig. 1[2]

25. By April 2, 2020, the virus had spread to the East Baton Rouge Parish Prison, where at least three inmates tested positive for the virus.[3]

---

[2] Louisiana Department of Health, https://ldh.la.gov/Coronavirus/
[3] https://www.theadvocate.com/baton_rouge/news/coronavirus/article_49eca0e4-8028-11ea-8a5a-ab5bc7534c4c.html

26. The East Baton Rouge Parish Sheriff's Office proved unable to contain the spread of the virus throughout the inmate population.

27. By April 16, 2020, a total of 53 East Baton Rouge Parish inmates had tested positive for COVID-19.[4]  At least two of those cases were serious enough to require hospitalization.[5]

28. The work release facility where Bradford Skinner was housed in April 2020 is located next to East Baton Rouge Parish Prison on Brig Gen Isaac Smith Avenue in Baton Rouge.

29. On or about April 3, 2020, Bradford Skinner was experiencing symptoms including chest pain and trouble breathing.  Fearing he may have contracted COVID-19, he reported these symptoms to a warden at the work release facility, and he requested to see a doctor.

30. In response to Mr. Skinner's concerns, the warden at the work release facility provided Mr. Skinner with lemon, ginger, and honey in order to make tea.  Mr. Skinner did not receive any other medical attention or treatment.

31. On April 4, 2020, Mr. Skinner was still experiencing symptoms of illness.  When he again requested medical attention, the warden told Mr. Skinner not to complain and made the following threat: "If you keep it up, I'm gonna show you what I'm going to do with you, Skinner."

32. Mr. Skinner then reported his symptoms to Defendant Martin, a captain at the work release facility, who also dismissed his concerns.

**C. Defendants Maced, Handcuffed, and Choked Bradford Skinner into Unconsciousness While Bradford Skinner Engaged in Passive Resistance.**

33. Shortly after Mr. Skinner requested medical attention from Defendant Martin, East Baton Rouge Parish Sheriff's Officers including Defendants Demarcus Braxton and Randolph Hyde arrived.

34. Mr. Skinner was placed in handcuffed by Defendant Martin.

---

[4] https://www.theadvocate.com/baton_rouge/news/coronavirus/article_68cd8eb0-752e-11ea-922d-4b48c675e1eb.html
[5] *Id*.

35. Mr. Skinner renewed his pleas for medical treatment, telling Defendants that he suffered from high blood pressure, was high-risk for contracting COVID-19, and needed to go to the hospital.

36. Mr. Skinner was coughing because he was sick. But he was not coughing **at** anyone. Nor did he spit at anyone.

37. While Mr. Skinner was in handcuffs, Defendant Braxton sprayed Mr. Skinner in the face with mace.

38. After being maced, Mr. Skinner stood still on a walking ramp.

39. These events occurred in view of other inmates at the work release facility. At some point after Mr. Skinner was maced and handcuffed, an individual present at the scene began filming the Defendants' use of force against Mr. Skinner.

40. While Mr. Skinner was standing still on the walking ramp, handcuffed, Defendant Braxton grabbed Mr. Skinner by his throat.

41. This was captured on video, available online at the following link and incorporated by reference herein: https://www.youtube.com/watch?v=3ZS2JkyQhEA&ab_channel=TheAppeal



42. Defendants Braxton, Hyde, and Martin all participated in forcibly pushing Mr. Skinner up against a metal railing as they placed leg shackles on him.

43. Simultaneously, Defendant Braxton held Mr. Skinner by the neck and bent Mr. Skinner over the railing face first, pushing his head down with one hand.

44. This was captured on video:



45. Defendants continued to apply pressure to Mr. Skinner until his arms dropped limp over the railing and he lost consciousness.

46. This was captured on video:



47. Defendants lifted Mr. Skinner so that his feet were not touching the ground, and then flung him onto the ramp.

48. This was captured on video:



49. Voices of witnesses can be heard on the video describing their observations contemporaneously, making statements such as:

"That man in handcuffs and they doing that to that man."

"That man can't breathe!"

"EBR got him."

"They maced the man, the man can't breathe and everything."

"He ain't even moving, man."

50. After Defendants choked Mr. Skinner into unconsciousness, he was lying on the ground. The video does not show any Defendant checking to see if he was breathing or checking for a pulse.

51. Defendants then grabbed his legs and arms and carried him off the walking ramp.

10

52. The same day, Defendant Braxton authored a disciplinary report charging Mr. Skinner with violating a rule against "Aggravated Disobedience."

53. A hearing was set for April 8, 2020. Mr. Skinner pled not guilty to the violation.

54. No disciplinary action was taken against Mr. Skinner for any violations of any rule on April 4, 2020.

55. As a result of the excessive force Defendants used against Mr. Skinner, he suffered injuries including pain in his neck, throat, back, and chest, difficulty breathing without coughing, and emotional distress. The day after the use of force, Mr. Skinner was coughing up blood and had a fever of over 100 degrees.

## V. CAUSES OF ACTION

### Count One - Excessive Force
### (Violation of the Fourth and/or Eighth Amendments to the United States Constitution)
### (All Defendants, Except Gautreaux)

56. Plaintiff realleges and incorporates each and every foregoing paragraph.

57. Clearly established law demonstrates that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance.[6]

58. Defendants employed excessive and unreasonable force, and caused excessive and unreasonable force to be employed, against Bradford Skinner, as specifically alleged above, in violation of Mr. Skinner's rights under either or both the Fourth and Eighth Amendment.

59. Defendants acted under the color of law.

---

[6] *Cambre v. Gottardi*, No. 18-6509, 2019 U.S. Dist. LEXIS 147007, at *9 (E.D. La. Aug. 28, 2019). *See also Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017) (determining the plaintiff's initial refusals to follow a police officer's instructions amounted to, "at most, passive resistance" and did not justify the officers use of a "'half spear' takedown" against the plaintiff); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (the plaintiff's refusal to get out of her car before her husband arrived on the scene constituted passive resistance); *Trammell v. Fruge*, 868 F.3d 332, 343 (5th Cir. 2017) (holding that "the law [as of January 2013] clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp").

60. Defendants used excessive and unreasonable force when they sprayed mace in Mr. Skinner's face.

61. After being maced, Mr. Skinner exhibited only passive resistance.

62. After being handcuffed, Mr. Skinner exhibited only passive resistance.

63. Defendants used excessive and unreasonable force when they grabbed Mr. Skinner repeatedly by the neck, forced his body into a metal railing, and bent him over the railing face first until he went limp – even though Mr. Skinner was already handcuffed and only exercised passive resistance.

64. As a result of Defendants' excessive force, Mr. Skinner suffered physical injuries and emotional harm.

65. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Mr. Skinner's clearly established constitutional rights. Defendants' misconduct was the cause of Plaintiffs' injuries.

66. Hyde and Martin are liable for excessive force both for their own actions and for their failure to intervene to stop Braxton.

67. "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted). The key elements of establishing a claim for bystander liability are proximity, ability to intervene, and acquiescence to use of force. *Imani v. Baton Rouge*, 17-cv-0439, R. Doc. 226 at *7 (M.D. La. Aug. 14, 2020) (summarizing current state of bystander liability law).

68. Here, Hyde and Luther's proximity (a few feet away), ability to intervene (the pepper-spraying-plus-choking sequence lasted minutes), and failure to act (they were active participants rather than an objector), pleads a claim for bystander liability for Hyde and Martin.

## Count Two
### Violation of Article 1, Section 5 of the Louisiana Constitution
### (All Defendants)

69. Plaintiff realleges and incorporates each and every foregoing paragraph.

70. Defendants' actions in conducting and causing the seizing, detaining, and excessive use of force on Mr. Skinner as described above violated his rights under Article 1, Section 5 of Louisiana's Constitution.

## Count Three
### Assault and Battery
### (All Defendants)

71. Plaintiff realleges and incorporates each and every foregoing paragraph.

72. Defendants' use of force against Bradford Skinner constituted assault and battery.

73. It was an assault because it put Mr. Skinner in immediate apprehension of a non-consensual harmful touching.

74. It was a battery because Defendants completed a non-consensual harmful touching.

## Count Four
### *Monell* and Failure to Train and Supervise
### (Defendant LOUISIANA WORKFORCE, L.L.C. only)

75. Plaintiff realleges and incorporates each and every foregoing paragraph.

76. Policymakers for local governments can be liable under *Monell* when "the action of the policymaker itself violated a constitutional right."[7]

77. A private prison management corporation like Defendant Louisiana Workforce, L.L.C. is considered a state actor and may be sued under § 1983 because it performs a function that is traditionally "the exclusive province of the state."[8]

---

[7] *See Anderson v. Larpenter*, 16-13733 (E.D. La. July 18, 2017), citing *Burge v. Parish of St. Tammany,* 187 F.3d 452, 471 (5th Cir. 1999); *see also Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986); *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 227 (5th Cir. 2008).

[8] *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 460-61 (5th Cir. 2003).

78. Defendants had a duty arising under the Fourteenth Amendment to the United States Constitution to adequately train, supervise and discipline all prison and jail personnel in order to prevent violations of inmates' rights.

79. Defendants were deliberately indifferent to their duties to properly train, discipline and supervise the jail staff.

80. Defendants declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of officers and agents.

81. As a result of Defendants' actions and omissions, including failure to train, supervise and discipline staff, Mr. Skinner's constitutional rights were violated.

## Count Five
## Vicarious Liability
### (Defendants GAUTREAUX and LOUISIANA WORKFORCE, L.L.C. only)

82. Plaintiff realleges and incorporates each and every foregoing paragraph.

83. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of Louisiana Workforce, L.L.C. within the scope of their employment.

84. Defendant Louisiana Workforce, L.L.C. is liable for the actions of its employees under the doctrine of *respondeat superior* (*see* Louisiana Civil Code article 2320).

85. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the East Baton Rouge Parish Sheriff's Office within the scope of their employment.

86. Defendant Gautreaux is therefore liable as a principal for all torts committed by his agents.

## RELIEF REQUESTED

87. Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

a. Declaratory relief;

b. Judgment against Defendants for Plaintiff's asserted causes of action;

c. Award of compensatory damages;

d. Award of special (e.g., punitive) damages;

e. Award costs and attorney's fees;

f. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

        Respectfully Submitted,

        /s/ William Most
        William Most, La. Bar No. 36914
        Law Office of William Most
        201 St. Charles Ave. Suite 114 #101
        New Orleans, LA 70170
        (504) 509-5023
        williammost@gmail.com