## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRADFORD SKINNER,** | **CIVIL ACTION: 20-cv-595** |
| **VERSUS** | |
| | **JUDGE SHELLY D. DICK** |
| **LOUISIANA WORKFORCE, L.L.C.; SID J. GAUTREAUX, in his individual and official capacity; DEMARCUS BRAXTON; RUDOLPH HYDE; JOHN DOE** | **MAGISTRATE JUDGE SCOTT D. JOHNSON** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants, Sheriff Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), DeMarcus Braxton, and Rudolph Hyde ("Sheriff Defendants") move this Honorable Court to dismiss Plaintiff's claims against them made in his Second Amended Complaint (Rec. Doc.40) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted for the reasons set forth herein.

## I.    INTRODUCTION

Plaintiff, Bradford Skinner, is a convicted inmate who was being housed at the Work Release facility in East Baton Rouge Parish, located next to the East Baton Rouge Parish Prison. East Baton Rouge Parish Prison Deputies Demarcus Braxton and Rudolph Hyde were called over to the neighboring Work Release facility to help with an incident with inmate Skinner. Plaintiff filed suit against Deputies Braxton and Hyde as well Sheriff Gautreaux. Plaintiff alleging that Prison Deputies Braxton and Hyde used excessive force against him. Plaintiff also brings claims against Louisiana Workforce, L.L.C. and its employee, Luther Martin.

Sheriff Defendants filed a Motion to Dismiss Plaintiff's claims against them.[1] This Honorable Court granted the Sheriff Defendants' Motion to Dismiss in part without prejudice and deferred it in part.[2] Noting that Plaintiff did not object to the dismissal of the constitutional claims against Sheriff Gautreaux and retained him only for *respondeat superior* liability for state law claims, this Court granted the motion to dismiss as to the constitutional claims against Sheriff Gautreaux.[3]

Further, this Court considered the excessive force claims against Deputy Braxton and Deputy Hyde in two parts: when Deputy Braxton maced Plaintiff and when Deputy Braxton alleged bent Plaintiff over the metal railing until he lost consciousness while on the walking ramp.[4] This Court found that based upon the alleged facts in the First Amended Complaint, neither Deputy Braxton nor Deputy Hyde violated Plaintiff's constitutional rights with respect to the mace claims.[5] Further, this Court found that Deputy Hyde did not violate Plaintiff's constitutional rights as to the allegations regarding bending Plaintiff over the metal railing while on the walking ramp. In addition, this Court found that Plaintiff failed to allege facts or provide jurisprudential support to allow an inference that Deputy Braxton's actions violated Plaintiff's clearly established rights.[6] This Court deferred ruling on Plaintiff's state law claims because the Court found that Plaintiff had failed to allege sufficient facts to support his federal law claims.[7]

This Court gave Plaintiff twenty-one days from the date of the Ruling to amend the First Amended Complaint to cure the deficiencies and ordered Plaintiff to file a Rule 7(a) Response to

---

[1] Rec. Doc. Rec. Doc. 27
[2] Rec. Doc. 39
[3] Rec. Doc. 39 page 6
[4] Rec. Doc. 39 page 9
[5] Rec. Doc. 39 page 11
[6] Rec. Doc. 39 page 12
[7] Rec. Doc. 39 page 13

the qualified immunity defense asserted by Sheriff Defendants.[8] Plaintiff filed a Second Amended Complaint and a Rule 7(a) Response. Plaintiff made the following changes in his amended complaint: 1.) the incorporation of the video of the incident by reference; 2.) that Skinner was not coughing or spitting *at anyone*; he was coughing because he was sick; 3.) the addition of a bystander liability claim against Deputy Hyde; 4.) that Skinner had a fever and was coughing up blood the day after the use of force; and 5.) removal of the constitutional claims against Sheriff Gautreaux.[9] As set forth below, Plaintiff has failed to allege additional facts to cure the deficiencies in his First Amended Complaint and has failed to show in his Rule 7(a) Response that he has alleged sufficient facts to defeat the Sheriff Defendants' defense of qualified immunity.

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges that at all times relevant to this litigation, Plaintiff, Bradford Skinner, was serving a sentence for non-violent drug crimes with the Louisiana Department of Safety and Corrections.[10] Plaintiff alleges that in April 2020, he was being housed at the work release facility in East Baton Rouge Parish, which is operated by Louisiana Workforce, L.L.C.[11] The work release facility where Plaintiff was housed in April 2020 is located next to the East Baton Rouge Parish Prison.[12]

Plaintiff alleges that on April 3, 2020, inmate Bradford Skinner informed a warden at the East Baton Rouge Work Release facility that he was experiencing chest pain, shortness of breath, and requested medical attention because he feared he might have contracted COVID-19.[13] Plaintiff alleges that he was given ingredients to make tea, but no medical care.[14] Plaintiff alleges that on

---

[8] Rec. Doc. 39 page 14
[9] See Rec. Doc. 41 Plaintiff's Rule 7(a) Response page 1
[10] Rec. Doc. 40 ¶19
[11] Rec. Doc. 40 ¶22
[12] Rec. Doc. 40 ¶28
[13] Rec. Doc. 40 ¶¶4,29
[14] Rec. Doc. 40 ¶¶4,30

April 4, 2020, when Plaintiff was suffering from the same symptoms, he again asked for medical attention, which was denied.[15] Plaintiff alleges that he also reported his symptoms to Defendant Martin, a captain at the work release facility, who also dismissed his concerns.[16]

Plaintiff alleges that shortly after he requested medical attention from Work Release Defendant Martin, East Baton Rouge Sheriff's Officers from the neighboring East Baton Rouge Parish Prison, Defendants Demarcus Braxton and Randolph Hyde arrived at the work release facility.[17] Plaintiff alleges that he was placed in handcuffs by Work Release Defendant Martin.[18] Plaintiff alleges that he renewed his pleas for medical treatment, telling Defendants that he suffered from high blood pressure, was high-risk for contracting COVID-19 and needed to go to the hospital.[19] Plaintiff adds the allegation that Mr. Skinner was coughing because he was sick; but he was not coughing at anyone, nor did he spit at anyone.[20] Plaintiff alleges that while he was in handcuffs, Deputy Braxton sprayed him in the face with mace.[21] Plaintiff alleges that after being maced, he stood still on a walking ramp.[22]

Plaintiff alleges that these events occurred in view of other inmates at the work release facility and that an individual present at the scene began filming the incident.[23] Plaintiff alleges that while he was standing still on the walking ramp, handcuffed, Deputy Braxton grabbed him by his throat.[24] Plaintiff adds an allegation in his Second Amended Complaint incorporating the video that allegedly captures this incident.[25] Plaintiff alleges that Defendants Braxton, Hyde and Martin

---

[15] Rec. Doc. 40 ¶¶5,31
[16] Rec. Doc. 40 ¶32
[17] Rec. Doc. 40 ¶¶5,33
[18] Rec. Doc. 40 ¶34
[19] Rec. Doc. 40 ¶35
[20] Rec. Doc. 40 ¶36
[21] Rec. Doc. 40 ¶37
[22] Rec. Doc. 40 ¶38
[23] Rec. Doc. 40 ¶39
[24] Rec. Doc. 40 ¶40
[25] Rec. Doc. 40 ¶41

all participated in forcibly pushing him up against a metal railing as they placed leg shackles on him.[26] Plaintiff alleges that simultaneously, Deputy Braxton held him by the neck and bent him over the railing face first, pushing his head down with one hand.[27] Plaintiff alleges "Defendants" continued to apply pressure to Mr. Skinner until his arms dropped limp over the railing and he lost consciousness.[28] Plaintiff alleges that "Defendants" lifted Mr. Skinner so that his feet were not touching the ground, and then flung him on to the ramp.[29]

## III.    LAW AND ARGUMENT

### A.  Applicable Standard

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[30]  "A legally sufficient complaint does not need to contain detailed factual allegations, but **it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.**"[31]  In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[32]  A complaint is also insufficient if it merely "tenders 'naked assertions[s]' devoid of 'further factual enhancement.'"[33]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[34] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[35] On a motion to dismiss,

---

[26] Rec. Doc. 40 ¶42
[27] Rec. Doc. 40 ¶43
[28] Rec. Doc. 40 ¶45
[29] Rec. Doc. 40 ¶47
[30] *National Bi-Weekly Admin. Inc. v. Belo Corp.,* 512 F. 3d 137, 140 (5th Cir. 2007)
[31] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)
[32] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 667 F. 2d 1045 (5th Cir. 1982)
[33] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted)
[34] *Iqbal,* 556 U.S. at 678
[35] *Taha V. William Marsh Rice Univ.,* 2012 WL 1576099 at *2 (S.D. Tex. 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions,* 365 F. 3d 353, 361 (5th Cir. 2004))

courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[36]

### B. Claims against Sheriff Gautreaux

Noting that Plaintiff did not object to the dismissal of the constitutional claims against Sheriff Gautreaux and retained him only for *respondeat superior* liability for state law claims, this Court granted the motion to dismiss as to the constitutional claims against Sheriff Gautreaux.[37] Plaintiff admits in his Rule 7(a) Response that he has removed his constitutional claims against Sheriff Gautreaux.[38] Plaintiff alleges in his Second Amended Complaint that he is suing Sheriff Gautreaux in his official capacity.[39] Plaintiff alleges in Count Five of his Second Amended Complaint that he is bringing a claim against Sheriff Gautreaux based upon the alleged misconduct/torts committed by his employees under a vicarious liability theory.[40] However, Plaintiff continues to assert in his Second Amended Complaint that he is bringing claims against "All Defendants" under Count Two for violation of Article 1, Section 5 of the Louisiana Constitution, and under Count Three for assault and battery.[41] To the extent that Plaintiff is bringing these claims against Sheriff Gautreaux for his own actions, based upon this Court's Ruling and Plaintiff's own admissions in his Rule 7(a) Response, these claims should be dismissed against Sheriff Gautreaux with prejudice.

Further, if this Court rules that Plaintiff has failed to state a State Law tort claim against Deputy Braxton and Deputy Hyde, then Plaintiff's Count Five *respondeat superior* (vicarious liability) liability claims should also be dismissed against Sheriff Gautreaux.

---

[36] *Twombly,* 550 U.S. 556 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))
[37] Rec. Doc. 39 page 6
[38] Rec. Doc. 41 page 1
[39] Rec. Doc. 40 ¶13
[40] Rec. Doc. 40 ¶¶ 85, 86
[41] Rec. Doc. 40 page 13

### C.  Federal Claims under Section 1983 in general

Plaintiff brings his federal constitutional claims pursuant to 42 U.S.C. Section 1983.[42] The Civil Rights Act of 1964, 42 U.S.C. Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law.[43]

It provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[44]

"Section 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[45]  To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[46] A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[47]

### D.  The Eighth Amendment applies to Plaintiff's claims

Plaintiff continues to assert that the "Defendants" violated his Fourth and/or Eighth

---

[42] Rec. Doc. 40 ¶10

[43] See *Moscary v. Ard,* 2018 WL 4608485 at *7 (M.D. La.2018) (citing *James v. Texas Collin County,* 535 F. 3d 365, 373 (5th Cir. 2008) (citation omitted)

[44] 42 U.S.C. Section 1983 (1996)

[45] *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *accord Graham v. Connor,* 490 U.S. 386, 393-94 (1989);*City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX,* 73 F. 3d 60, 63 (5th Cir. 1996), *cert. denied,* 519 U.S. 818 (1996); *Young v. City of Killeen,* 775 F. 2d 1349, 1352 (5th Cir. 1985).

[46] See *Blessing v. Freestone,* 250 U.S.329,340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1996); *Augustine v. Doe,* 740 F. 2d 322, 324-25 (5th Cir. Cir. 1984).

[47] See *Schultea v. Wood,* 47 F. 3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir. 1990), *cert denied,* 498 U.S. 908 (1990); *Jacques v. Procunier,* 801 F. 2d 789, 793 (5th Cir. 1986); *Angels. City of Fairfield,* 793 F. 2d 737, 739 (5th Cir. 1986).

Amendment rights by using excessive force in restraining him.[48] However, this Court ruled that the Eighth Amendment rather than the Fourth Amendment applies to this case because Plaintiff was detained pursuant to a judgment of conviction and the force at issue occurred in a correctional facility in response to a prison disturbance.[49] Therefore, to the extent Plaintiff is making a Fourth Amendment claim in his Second Amended Complaint, this claim should be dismissed with prejudice.

### E. Plaintiff fails to state a Section 1983 individual capacity claim against Deputy Braxton or Deputy Hyde and they are entitled to qualified immunity.

#### 1. Qualified Immunity

A public official is entitled to qualified immunity unless the plaintiff demonstrates: 1.) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law, and 2.) the defendant's actions were objectively unreasonable in light of clearly established law at the time of that conduct.[50] A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[51]  To determine whether an official is entitled to qualified immunity, the court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted."[52]

The U.S. Supreme Court reiterated the longstanding principle that "clearly established law" should not be defined "at a high level of generality." Rather, "the clearly established law must be "particularized" to the facts of the case."[53] "Because the focus is on whether the officer had fair

---

[48] Rec. Doc. 40 ¶¶56-68
[49] Rec. Doc. 39 pages 7 and 8
[50] *Porter v. Epps*, 659 F. 3d 440 (5th Cir. 2011)
[51] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083, 179 L. Ed. 1149 (2011)
[52] *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)
[53] *White v. Pauly*, 137 S. Ct. 548 (2017) (citations omitted)

notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[54] "Existing precedent must have placed the statutory or constitutional question beyond debate."[55] "The dispositive question is whether the violative nature of *particular* conduct is clearly established. [That] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."[56] "'The pages of the *United States Reports* teem with warnings about the difficulty of' of showing that the law was clearly established."[57] "Doing so 'is especially difficult in excessive-force cases'… because 'the result depends very much on the facts of each case.'"[58] Even when officers act in unison, their conduct must be evaluated separately.[59]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendants' conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"[60] Plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendants conduct at the time of the alleged acts."[61] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[62]

"[P]ersonal involvement is an essential element of a civil rights cause of action."[63] The Fifth Circuit has held that, in a claim asserted under Section 1983, "[a] plaintiff must establish that the defendant is either personally involved in the deprivation or that his wrongful actions were

---

[54] *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (per curium) (quoting *Brousseau v. Haagen,* 543 U.S. 194, 198, 125 S. Ct. 596 (2004) (per curium))
[55] *White v. Pauly,* 137 S. Ct. 548, 551 (2017)
[56] *McCoy v. Alamu,* 950 F. 3d 226, 233 (5th Cir. 2020) (citing *Mullenix v. Luna,* 577 U.S. 7, 136, S. CT. 305, 308, 193 L. Ed. 2nd 255 (2015) (per curiam) (citation and quotation marks omitted).
[57] *Id.* at 233 (citing *Morrow v. Meachum,* 917 F.3d 870, 874 (5th Cir. 2019)))
[58] *Id* at 233 (citing *Morrow* at 876)
[59] *Pratt v. Harris Cnty., Tex.,* 822 F. 3d 174, 181 (5th Cir. 2016)
[60] *McClendon,* 305 F. 3d at 323 (quoting *Behring v. Pelletier,* 516 U.S. 299, 309 (1996)
[61] *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*)
[62] *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000)
[63] *Thompson v. Steele,* 709 F. 2d 381, 382 (5th Cir. 1983)

9

causally connected to the deprivation."[64]

### 2. Excessive Force under the Eighth Amendment

"In evaluating excessive force claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[65] This standard focuses on "the detention facility official's subjective intent to punish."[66] To determine intent, the Fifth Circuit references "the well-known *Hudson* factors" to determine whether the use of force was constitutionally permissible.[67]  These factors are: "(1)the extent of the injury suffered, (2)  the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response."[68] Further, the Supreme Court has stated that prison disturbances "may require prison officials to act quickly and decisively."[69] "The amount of force used must be more than *de minimis,* provided the use of force is not of a sort repugnant to the conscience of mankind."[70]

### 3. Plaintiff has not alleged facts to support an excessive force claim against Demarcus Braxton and he is entitled to qualified immunity.

Plaintiff fails to allege sufficient facts as to Deputy Braxton's conduct to satisfy the pleading requirement for an Eighth Amendment claim for excessive force and Deputy Braxton is entitled to qualified immunity. In its ruling, this Court considered the Sheriff Defendants' allegedly excessive use of force in two parts: when Deputy Braxton maced Plaintiff and the

---

[64] See  *Moscary v. Ard,* 2018 WL 4608485 (M.D. La. 2018) (citing *James v. Texas Collin County,* 535 F. 3d 365, 373 (5th Cir. 2008) (citation omitted)
[65] *Cowart v. Erwin,* 837 F. 3d444, 452 (5th Cir. 2016) (quoting *Hudson v. McMillian,* 503 U.S. 1,6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992))
[66] *Id.* (Quoting *Valencia v. Wiggins,* 981 F. 2d 1440, 1449 (5th Cir. 1993))
[67] *Id.* At 452-453
[68] *Bourne v. Gunnels,* 921 F. 3d 484, 491
[69] *Hudson* 503 U.S. at 6
[70] *Cowart* at 453

incident on the walking ramp in which Plaintiff claims Deputy Braxton bent Plaintiff over the metal railing until he lost consciousness.

### a. Mace/Pepper Spray incident

As to the mace incident, Plaintiff alleges that shortly after he requested medical attention from Work Release Defendant Martin, East Baton Rouge Parish Prison Deputy Braxton arrived.[71] Plaintiff alleges that he was placed in handcuffs by Defendant Martin.[72] Plaintiff alleges that while he was in handcuffs, Deputy Braxton sprayed him in the face with mace.[73] This Court ruled that Plaintiff admitted in his Memorandum in Opposition to Motion to Dismiss that Braxton used pepper spray in order to induce Plaintiff to comply with his orders to stop spitting and coughing at people.[74] This Court ruled that Braxton's actions in using mace did not violate Plaintiff's constitutional rights.[75] This Court held that each of the *Hudson* factors weighs against a finding of excessive force. This Court found as follows: "Plaintiff's alleged injuries mostly derived from events after the macing; Plaintiff admits that he was spitting and coughing at people; a brief spray of mace is not disproportionate to the need to get Plaintiff to comply with orders to stop spitting and coughing; Braxton perceived non-compliance as well as the threat of exposure to Plaintiff's bodily fluids; and the duration of the spray was brief."[76] The Court found that the spray was used to restore order in the prison and not "maliciously and sadistically to cause harm."[77]

Plaintiff amended his complaint in an attempt to cure the deficiencies set forth in the Court's ruling. Plaintiff added the following allegation in his Second Amended Complaint: "Mr. Skinner was coughing because he was sick. But he was not coughing **at** anyone. Nor did he spit

---

[71] Rec. Doc. 40 ¶33
[72] Rec. Doc. 40 ¶34
[73] Rec. Doc. 40 ¶37
[74] Rec. Doc. 39 pages 9 and 10 citing Rec. Doc. No. 28 p. 7
[75] Rec. Doc. 39 page 10
[76] Rec. Doc. 39 page 10
[77] Rec. Doc. 39 page 11

at anyone."[78] It is unclear to undersigned counsel from the new allegations whether Plaintiff is now asserting that he was not spitting at all or just not spitting at anyone. In any event, this new allegation is directly contrary to Plaintiff's admission in his Opposition, as noted by this Court, that he was coughing and spitting towards the deputies prior to Deputy Braxton's use of mace.[79] Plaintiff also admitted in his Opposition that he complied and stopped coughing and spitting after being pepper-sprayed by Braxton to get him to stop.[80] These admissions are clearly contrary to Plaintiff's new allegations that he was coughing because he was sick and he was not coughing at anyone.

This Court should not consider Plaintiff's new claim in his Second Amended Complaint that he was not coughing or spitting *at anyone* prior to being sprayed with pepper spray as his allegations in his prior pleadings to the contrary, constitute a judicial admission. This Court has already treated Plaintiff's prior statements in his Opposition that he was coughing and spitting at people prior to being sprayed by pepper spray as an admission.[81] The Fifth Circuit has explained judicial admissions as follows:

> A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. [82]

The Fifth Circuit allows the treatment of statements in briefs as binding judicial admissions.[83] This Court should treat Plaintiff's prior statement in his Opposition as a judicial admission and not consider his new claim that he was not coughing or spitting at anyone prior to being pepper sprayed.

---

[78] Rec. Doc. 40 ¶36
[79] Rec. Doc. 28 page 7
[80] Rec. Doc. 28 page 7
[81] Rec. Doc. 39 pages 5 and 10
[82] *Martinez v. Bailley's Louisiana Inc.,* 244 F. 3d 474, 476-77 (5th Cir. 2001)
[83] *City Nat'l Bank v. United States,* 907 F. 2d 536, 544 (5th Cir. 1990)

Further, Plaintiff's new claim is precluded by judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceedings.[84] "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment."[85] Fifth Circuit courts have identified two limitations on judicial estoppel: (1) the position of the party estopped must be clearly inconsistent with its prior position; and (2) the court must have accepted that prior position.[86] Judicial acceptance requires that the court adopted the position previously urged by a party, whether as a preliminary matter or as part of a final disposition.[87]

Plaintiff should be precluded by judicial estoppel from asserting that he was not coughing or spitting at anyone prior to being pepper sprayed. Plaintiff should be prohibited from deliberately changing his position in an attempt to cure the deficiencies noted by this Court in its ruling on the Sheriff Defendants' motion to dismiss. Plaintiff's new position that he was not coughing or spitting at anyone prior to being pepper sprayed is clearly inconsistent with his prior position set forth in his Opposition. Further, this Court accepted Plaintiff's prior position in its Ruling on the Sheriff Defendants' motion to dismiss. Thus, this Court's prior ruling that Deputy Braxton did not violate Plaintiff's constitutional rights should stand.

Further, "when amended pleadings are a transparent attempt to conform the facts to the requirements of the cause of action and represent diametrically opposed recollections of the

---

[84] *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F. 3d 274,293 (5th Cir. 2004) citing *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F. 3d 391, 396 (5th Cir. 2003)
[85] *Id at 294* citing *United States v. McCaskey,* 9 F. 3d 368, 378 (5th Cir. 1993)
[86] *Id at 294* (citations omitted)
[87] *Id* at 294 (citations omitted)

events, the Court has discretion to reject the changes as sham."[88]

However, even if this Court considered Plaintiff's new position that he was coughing because he was ill and he was not coughing or spitting *at anyone*, Plaintiff has not stated a cause of action for excessive force against Deputy Braxton.

Each of the *Hudson* factors would still weigh against a finding of excessive force. Even under his new allegation, Plaintiff admits that he told the deputies that he was ill; he was coughing prior to the use of pepper spray and that after being maced, he stood still on the walking ramp.[89]

Plaintiff asserts in his Rule 7(a) Reply that qualified immunity should be denied given the fact that Plaintiff "may have been coughing, but was not coughing at anyone" … "because he was at most, displaying passive resistance to a guard's orders, which would justify only minimal force."[90] In this recent filing, Plaintiff admits that he was resisting the defendants' orders and minimal force was justified. Plaintiff had previously admitted in his Opposition that he complied and stopped coughing and spitting after being pepper-sprayed by Braxton to get him to stop.[91] Taken together, Plaintiff has admitted at the very least, that he was coughing, one of the guards ordered him to stop coughing and sprayed him with pepper spray in order to get him stop; and that he did indeed stop coughing after being sprayed.

Deputy Braxton could reasonably perceive Plaintiff's actions as a threat. The focus is on the officer's subjective intent, not on the inmate's intent. It was reasonable for Deputy Braxton to assume that Plaintiff, was coughing with the intent to cause him and/or others harm and to use pepper spray to induce Plaintiff to stop coughing. Plaintiff's admissions in his Opposition and his allegations in his Second Amended Complaint support the fact that he was ordered to stop

---

[88] *Bradley v. Chiron Corp.,* 136 F. 3d 1317, 1324-25 (Fed. Cir. 1998) (rejecting allegations that were materially changed without adequate explanation)
[89] Rec. Doc. 40 ¶35, 36,38
[90] Rec. Doc. 41 page 2
[91] Rec. Doc. 28 page 7

coughing, he disobeyed the order and that after he was sprayed with pepper spray, Plaintiff complied and stopped coughing.  As this Court noted, Plaintiff's alleged injuries are mostly derived from the events after the use of pepper spray and that the duration of the spray was brief.[92] A brief spray of mace is not disproportionate to the need to get Plaintiff to stop coughing and subjecting the deputies and others to bodily fluid. Even if this Court considers Plaintiff's new allegations that he was not intentionally coughing or spitting at anyone, Plaintiff has not alleged a constitutional violation against Deputy Braxton.

The use of mace is not forbidden by the United States Constitution.[93] Braxton's use of mace was applied in a good-faith effort to restore discipline and was not done maliciously and sadistically to cause harm. Therefore, Braxton's actions in using pepper spray on Plaintiff in this case did not violate Plaintiff's constitutional rights and the first prong of the qualified immunity defense is met and there is no need for this Court to determine if the right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis.[94]

In any event, Plaintiff has failed to show in his Rule 7(a) Reply that Deputy Braxton's actions in using pepper-spray in this case were objectively unreasonable in light of clearly established law at the time of his conduct. The law is clearly established if there is factually similar controlling case law from the Fifth Circuit or the Supreme Court.[95] Plaintiff provides no "binding Supreme Court or Fifth Circuit precedent to anchor [the Court's] review of whether a similarly situated officer violated a constitutional right acting under similar circumstances."[96]

Plaintiff cites *Hudson v. McMillian*, 503 U.S. 1 (1992) in his Rule 7(a) Reply to support his argument that qualified immunity should be denied as to Deputy Braxton's use of pepper

---

[92] Rec. Doc. 39 page 10
[93] *Stone v. Damons*, No. 06-61087, 252 F. App'x 581, 582 (5th Cir. 2007)
[94] *Manis v. Lawson*, 585 F. 3d 839, 843 (5th Cir. 2009)
[95] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F. 3d 268, 276 (5th Cir. 2015)
[96] *Keller v. Fleming*, 952 F. 3d 216, 225 (5th Cir. 2020)

spray. In *Hudson,* the inmate alleged that one officer, after arguing with the inmate, punched the inmate in the mouth, eyes, chest and stomach while another officer held the inmate in place and kicked and punched him from behind. The Supreme Court in *Hudson* held that a prisoner is able to maintain a claim of cruel and unusual punishment under the Eighth Amendment based on officers' excessive use of force not resulting in serious injury. *Hudson* is not a factually similar case.

Plaintiff cites several cases from other jurisdictions, which are not controlling and are not factually similar. Plaintiff cites *Peterson v. Meisner,* 15-cv-49 jdp 2017 U.S. Dist. LEXIS 181413 (W.D. Wis. Nov. 2, 2017). [97] In *Peterson* the guards intentionally twisted the inmate's wrist when handcuffed, slammed the inmate's head into a concrete wall, punched, him, kicked him, used a knee kick to his thigh, manipulated several pressure points to cause pain, hit his leg with a metal baton and placed extreme pressure on the inmate's head. The Court held that the inmate's disruptive behavior, disrespectful and insulting comments and noncompliance with orders would justify discipline, though not necessarily the amount of force used in this case. This case is not controlling and is not factually similar.

Another case from another jurisdiction cited by Plaintiff, *Becker v. Elfreich,* 821 F.3d 920 (7th Cir. 2016) is not controlling or factually similar.[98] *Becker* involved an officer pulling an arrestee down some steps and allowing a dog to bite the arrestee during an arrest. The use of force during an arrest is analyzed under the Fourth Amendment. *Becher* did not involve the use of force against an inmate at a correctional facility, which is analyzed under the Eighth Amendment.

---

[97] Rec. Doc. 41 page 2
[98] Rec. Doc. 41 page 2

Plaintiff cites *Guy v. Metro Gov't of Nashville & Davidson Cnty.,* 14-cv-01585 (M.D. Tenn., June 8, 2016), a case which is not controlling or factually similar.[99] The District Court denied the officer's motion for summary judgment on qualified immunity when a guard used pepper spray on an inmate who paused multiple times, stopped and began to turn toward the officer while being escorted back to her cell when she requested to see a nurse. The Sixth Circuit held that a correction officer who allegedly sprayed a non-threatening pretrial detainee with a chemical agent when she did not comply with the officer's verbal orders and passively resisted to an open-hand escort by hesitating and stopping to turn to ask again about seeing a nurse was properly denied qualified immunity as to the detainee's excessive force claim under the Fourteenth Amendment. The Court held that the evidence did not blatantly contradict the detainee's claim that she was sprayed without provocation. This case is not controlling because it is a Sixth Circuit case. In any event, the case is not factually similar. In the case at hand, there clearly was provocation for spraying Plaintiff with pepper spray. Plaintiff was **not** non-threatening. Plaintiff was an admittedly sick inmate, who refused to stop coughing, when ordered to do so, creating a situation that was dangerous to those around him.

Plaintiff argues that a recent Supreme Court case, *McCoy v. Alamu,* 141 S. Ct. 1364 (2021) is applicable to determine the reasonableness of Deputy Braxton's conduct. The Supreme Court in *McCoy* remanded the case back to the Fifth Circuit Court of Appeals for further consideration in light of *Taylor v. Riojas,* 592 U.S. ___, 141 S. Ct. 52, 208 L. Ed. 2d 164 (2020) (per curiam). Plaintiff explains that *Taylor* is a recent Supreme court case holding that some conduct is so egregious as to "obviously offend [] the Constitution."[100] The plaintiff in *Taylor* alleged that he was housed in a cell covered in massive amounts of feces all over the floor, the ceiling, the

---

[99] Rec. Doc. 41 page 2
[100] Rec. Doc. 41 page 3

window and walls and even packed inside the water faucet, for six days. The Supreme Court in
*Taylor* held that "[c]onfronted with the particularly egregious facts of this case, any reasonable
officer should have realized that Taylor's conditions of confinement offended the
Constitution."[101] Thus, the Supreme Court found that the Fifth Circuit erred in granting the
officers qualified immunity on the basis that the officers responsible for Taylor's confinement
did not have fair warning that their specific acts were unconstitutional. Deputy Braxton's use of
pepper spray in this case to stop Plaintiff from coughing is not close to being so egregious as to
obviously offend the Constitution.

Plaintiff argues that in remanding the *McCoy* case back to the Fifth Circuit for further
consideration in light of *Taylor*, the Supreme Court sent a signal that unprovoked and unnecessary
use of force on a non-threatening inmate-including the use of pepper spray-likely does not merit
a grant of qualified immunity.[102] In *McCoy*, a guard sprayed the plaintiff with pepper spray after
*a different* prisoner had twice thrown liquids at the guard.  The Court noted that plaintiff in *McCoy*
submitted summary judgment evidence that the guard had grown frustrated with the other inmate
and arbitrarily took out his anger on McCoy by spraying him for no reason at all.[103] The Fifth
Circuit found a constitutional violation under these facts but noted "[t]he use of chemical spray
is certainly not a 'per se violation of the Eighth Amendment,' even where the targeted inmate is
locked in his cell."[104] The Fifth Circuit explained "[o]fficals may use chemical spray where
'reasonably necessary to prevent riots or escapes or to subdue recalcitrant prisoners.'"[105] But the
Fifth Circuit noted that they cannot do so for the sole purpose of punishment or the infliction of

---

[101] *Taylor* at 53
[102] Rec. Doc. 41 page 3
[103] *McCoy* at 231
[104] *Id* citation omitted
[105] *Id* citing *Clemmons v. Greggs,* 509 F. 2d 1338, 1340 (5th Cir. 1975)

pain.[106] The Fifth Circuit determined that the spraying in that case was unconstitutional but that it was not beyond debate that it was, so the law was not clearly established.[107]

The case at hand is distinguishable from *McCoy* because Braxton's use of pepper spray was not unprovoked and was not used on a non-threatening inmate. Even under Plaintiff's new claims, he admits that he was coughing and resisting the guard's orders to stop. It was reasonable for Deputy Braxton to consider Plaintiff's actions as a threat to the health and safety of those around him. Plaintiff admits that his noncompliance with orders would justify minimal force.[108] The use of pepper spray in this case was minimal force to stop Plaintiff, an admittedly sick inmate, from coughing and exposing others to his bodily fluids after he had been ordered to stop. In fact, Plaintiff admitted in his Opposition that he stopped coughing and spitting after he was sprayed with pepper spray.[109] Plaintiff's allegations against Deputy Braxton in using pepper spray on Plaintiff to stop him from coughing and spreading his bodily fluids to those nearby are clearly distinguishable from the facts in *McCoy*, in which the officer used pepper spray on the inmate for no reason at all.

Plaintiff asserts that the Supreme Court's decision in *McCoy* is precedent for this case because, even though the decision was after the events in this case, the facts of *McCoy* took place four years prior to the incident in this case.[110] In making this argument, Plaintiff misunderstands the qualified immunity defense. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[111] The Supreme Court's 2021 decision in *McCoy* was not the law at the time of

---

[106] *Id* citation omitted
[107] *Id* at 232
[108] Rec. Doc. 41 page 2
[109] Rec. Doc. 28 pages 1 and 7
[110] Rec. Doc. 41 page 3
[111] *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) Plaintiff even cites this case for this proposition.

Deputy Braxton's conduct in this case in April 2020. It is irrelevant to this case that the incident at issue in *McCoy* occurred prior to the incident in this case. The Supreme Court's decision in *McCoy* is not precedent in this case to determine the reasonableness of Deputy Braxton's decision to use pepper spray on Plaintiff.

Finally, Plaintiff notes several federal courts in other districts have treated pepper spray as a dangerous weapon in *criminal* cases and that chemical weapons are banned for use in war.[112] However, these criminal cases and any determination that chemical weapons are banned for use in war have no bearing on whether Deputy Braxton violated Plaintiff's clearly established rights in this case. The facts surrounding Deputy Braxton's use of pepper spray on Plaintiff show that he used the pepper spray in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.

### b. Incident on the walking ramp

As this Court noted in its ruling, the second part of the events giving rise to this suit begins with Deputy Braxton allegedly grabbing Plaintiff by the throat while the two stand on a walking ramp.[113] Next, Plaintiff claims that Defendants Braxton, Hyde and Martin all participated in forcibly pushing Plaintiff up against a metal railing as they placed leg shackles on him.[114] Plaintiff alleges that simultaneously, Deputy Braxton held him by the neck and bent him over the railing face first, pushing his head down with one hand.[115] Plaintiff alleges that he was pinned against the metal railing until he lost consciousness.[116] Plaintiff alleges that after he lost consciousness, the Defendants lifted him so that his feet were not touching the ground and flung him onto the

---

[112] Rec. Doc. 41 page 3
[113] Rec. Doc. 39 page 11; See Second Amended Complaint ¶¶38, 40
[114] Rec. Doc. 40 ¶42
[115] Rec. Doc. 40¶43
[116] Rec. Doc. 40¶45

ramp.[117] Plaintiff alleges that the video shows that none of the Defendants checked him for a pulse and they picked him up by his legs and arms and carried him off the walking ramp.[118] Plaintiff admits that the incident at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance.[119]

After citing these alleged facts (which Plaintiff has not amended in his Second Amended Complaint), this Court stated that the question before the Court is "did Braxton and Hyde violate Plaintiff's constitutional rights when they engaged in these behaviors while attempting to shackle Plaintiff's legs; and if so, were those constitutional rights clearly established such that a reasonable officer would have known that what they were doing violated those rights?"[120] This Court held that "Plaintiff has failed to provide sufficient factual allegations and jurisprudential support to allow an inference that Braxton's actions violated Plaintiff's clearly established rights. Plaintiff must point the Court to authority that would have put Braxton on notice that what he did violated the law."[121] This Court held that "based solely on Plaintiff's failure to adequately allege and support a clearly established right in order to defeat qualified immunity, and without regard to the substantive viability of Plaintiff's excessive force claim, Plaintiff's excessive force claim against Braxton is dismissed."[122] This Court allowed Plaintiff to amend his complaint to cure the deficiencies set forth by the Court and ordered Plaintiff to file a Rule 7(a) Response to the Sheriff Defendants' qualified immunity defense.[123]

The only additional allegation Plaintiff added to his Second Amended Complaint related to the incident on the walking ramp was that he incorporated by reference a video of the incident

---

[117] Rec. Doc. 40 ¶47
[118] Rec. Doc. 40 ¶¶50, 51
[119] Rec. Doc. 40 ¶¶ 39 and 49
[120] Rec. Doc. 39 page 12
[121] Rec. Doc. 39 page 12 citing *Keller v. Fleming,* 952 F. 3d 216, 225 (5th Cir. 2020)
[122] Rec. Doc. 39 page 13
[123] Rec. Doc. 39 page 14

that he had previously referenced in his First Amended Complaint.[124] However, the video adds nothing new to the facts Plaintiff alleged in his First Amended Complaint. Plaintiff had previously included still photos from the video in his First Amended Complaint. Plaintiff described the incident captured by the video in is First Amended Complaint. Plaintiff has still not alleged sufficient factual allegations to allow an inference that Braxton's actions violated Plaintiff's clearly established rights.

Further, Plaintiff does not cite to any case in his Rule 7(a) Response that shows that a similarly situated officer violated the Eighth Amendment acting under similar circumstances. Plaintiff asserts that the inclusion of the video in the Second Amended Complaint makes it clear that the officers continued to choke him after he was fully subdued, ultimately to the point that he was fully unconscious.[125] However, the video is consistent with Plaintiff's factual allegations in his First Amended Complaint, that were repeated in his Second Amended Complaint that the officers were attempting to place leg shackles on Plaintiff the entire time they were holding him against the railing. This Court noted in its ruling that the question was whether the defendants violated Plaintiff's constitutional rights when they engaged in these behaviors while attempting to shackle Plaintiff's legs and if so, whether those rights was clearly established.[126]

Plaintiff asserts that qualified immunity should be denied because the Fifth Circuit held in *Waddleton v. Rodriguez,* 750 Fed. Appx. 248, 256 (5th Cir. 2018) (*per curiam, unpublished, cert denied)* that "prison officials may violate an inmate's Eighth Amendment rights when they 'use gratuitous force against a prisoner who has already been subdued.'"[127] The Fifth Circuit in *Waddleton* distinguished the facts in that case from the facts in *Kitchen v. Dallas Cty., Tex.,* 759

---

[124] Rec. Doc. 40 ¶41
[125] Rec. Doc. 41 page 3
[126] Rec. Doc. 39 page 12
[127] Rec. Doc. 41 page 4

F.3d 468, 479 (5th Cir. 2014), the case it cited standing for this proposition. The Fifth Circuit noted that it has held the use of force is excessive "when an officer has punched a handcuffed prisoner in the face and that kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances."[128] The inmate in *Kitchen* was fully restrained when the force was used and he died from his injuries. Important to this case, the Fifth Circuit in *Kitchen* added "[a]t the same time, we emphasize that we do not endorse a per se rule that no force may ever be used after an inmate has been subjected to measures of restraint-particularly if the effect of the restraint is only partial."[129] The Court in *Kitchen* went on to explain "[f]or example [citation omitted] handcuffs 'obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick.' The extent to which measures of restraint have rendered unnecessary any further use of force under *Hudson*, 503 U.S. at 7, will depend on the specific facts and circumstances of each case."[130] Finally, Plaintiff cites another case, *Cowart v. Erwin*, 837 F. 3d 444, 454-455 (5th Cir. 2016) citing *Kitchen* for the proposition that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[131] The guard in *Cowart* punched the plaintiff in the face/head two times while the plaintiff was restrained and non-threating[132] The Court in *Cowart* held that at the time of the incident in 2009, it was well-established in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who is already subdued…[or] incapacitated."[133]

The facts in *Kitchen* and *Cowart* stand in stark contrast to the Defendants' actions in this case. The alleged facts show that Deputy Braxton's actions were taken as a good faith effort to

---

[128] *Waddleton* at 256 citing *Kitchen v. Dallas Cty., Tex.,* 759 F. 3d 468, 479 (5th Cir. 2014)
[129] *Kitchen* n. 30 internal citations omitted
[130] *Id*
[131] Rec. Doc. 41 page 4
[132] *Cowart* at 454
[133] *Id.*

maintain or restore discipline and not maliciously and sadistically to cause harm.  Plaintiff was not already subdued or fully restrained when the force was used; defendants were in the process of placing leg shackles on Plaintiff.  The Defendants in this case did not gratuitously punch or kick Plaintiff.  The force used, was in an attempt to hold Plaintiff up against the rail while leg shackles were placed on him. The force used was not gratuitous. Deputy Braxton's struggle with Plaintiff on the ramp only lasted long enough to get Plaintiff in leg shackles. The threat to the security at the corrections facility is evident by the fact that the disturbance that Plaintiff was causing at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance. Deputy Braxton did not violate Plaintiff's constitutional rights based upon his behavior while attempting to shackle Plaintiff's legs. Further, a reasonable officer in Deputy Braxton's position would not have known that what he was doing violated those rights under clearly established law. Plaintiff has failed to point to controlling authority that would have put Deputy Braxton on notice that his actions violated the law.

### 4. Plaintiff has not alleged an excessive force claim or a bystander liability claim against Rudolph Hyde and he is entitled to qualified immunity.

This Court held in its ruling on the Sheriff Defendants' first motion to dismiss that Plaintiff did not allege sufficient facts to support an excessive force claim against Deputy Hyde and dismissed these claims, allowing Plaintiff a chance to amend his complaint to cure the defects noted.[134] Specifically, this Court held that Deputy Hyde did not violate Plaintiff's constitutional rights related to the use of mace, because "Plaintiff does not allege that Hyde did anything but arrive on the scene at this point."[135] Further, this Court noted with respect to the incident on the walking ramp that "[t]he only allegations as to Hyde are that he pushed Plaintiff up against the

---

[134] Rec. Doc. 39 pages 11, 12
[135] Rec. Doc. 39 page 11

railing while putting leg shackles on him, and that he helped carry Plaintiff off the walking ramp after he lost consciousness."[136] This Court held that this is a *de minimis* use of force that does not amount to a constitutional violation as it is not "repugnant to the conscience of mankind."[137]

Plaintiff does not allege any additional facts in his Second Amended Complaint to cure these defects. Instead, Plaintiff added an allegation in his Second Amended Complaint that "Hyde and Martin are liable for excessive force both for their own actions and for their failure to intervene to stop Braxton."[138] This new conclusory allegation does not cure the defects noted by this Court regarding claims that Deputy Hyde used excessive force. Thus, Plaintiff's excessive force claims against Deputy Hyde based upon his own actions should be dismissed with prejudice.

This Court held that it would not consider Plaintiff's bystander liability claim against Hyde because it was not pled in the original Complaint or the First Amended Complaint.[139] As mentioned above, Plaintiff has added an allegation in his Second Amended Complaint for bystander liability against Deputy Hyde. Plaintiff has failed to state a claim against Deputy Hyde for bystander liability and he is entitled to qualified immunity.

The Fifth Circuit has held that "an officer may be liable under Section 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[140] As this Court noted in *Frances v. Boeker,* Civil Action No. 16-496, 2020 U.S. Dist. LEXIS 109732, 2020 WL 3440559 (M.D. La. June 23, 2020), "[a] reasonable opportunity to intercede and prevent the constitutional violation is "[t]he focus of the bystander liability

---

[136] Rec. Doc. 39 page 12
[137] Rec. Doc. 39 page 12 citing *Cowart v. Erwin,* 837 F. 3d 444, 452 (5th Cir. 2016)
[138] Rec. Doc. 40 ¶66
[139] Rec. Doc. 39 page 5
[140] *Whitley v. Hanna,* 726 F. 3d 631, 646 (5th Cir. 2013)

inquiry.'"[141] In order to be held liable as a bystander, the officer must have had time to appreciate the offending officer's use of excessive force and intervene.[142]

Plaintiff adds the following allegation to in his Second Amended Complaint "Hyde and Luther's proximity (a few feet away), ability to intervene (the pepper-spraying-plus-choking sequence lasted minutes), and failure to act (they were active participants rather than an objector), pleads a claim for bystander liability for Hyde and Martin."[143]

If this court finds that Plaintiff has not alleged an excessive use of force by Deputy Braxton or that he is entitled to qualified immunity, then Deputy Hyde cannot be liable for failing to intervene to prevent the use of force. A plaintiff can successfully bring a claim for bystander liability "only where the plaintiff can allege and prove 'another officer's use of excessive force.'"[144] Further, when qualified immunity shields an officer from liability for alleged excessive force, another officer at the scene cannot be liable under bystander liability because the action was reasonable.[145]

In any event, Plaintiff does not allege sufficient facts to suggest that Deputy Hyde had a reasonable opportunity to intercede and prevent the alleged use of excessive force by Deputy Braxton in connection with either the mace incident or the alleged choking incident on the walking ramp. First, Plaintiff does not allege facts to show that Deputy Hyde had an opportunity to prevent Deputy Braxton from administering control spray on Plaintiff. Plaintiff merely alleges that Defendant Braxton sprayed Plaintiff in the face with mace after Deputy Hyde and Deputy Braxton arrived.[146] In his Second Amended Complaint, Plaintiff alleges that Deputy Hyde was

---

[141] *Frances* at *1 citing *Malone v. City of Fort Worth, Tex.,* Civil Action No. 4:09-CV-634, 2014 U.S. Dist. LEXIS 157218, 2014 WL 5781001, *16 (N.D. Tex. Nov. 6, 2014)

[142] *Moore v. LaSalle Corr., Inc.,* Civil Action No. 3:16-cv-01007 2020 U.S. Dist. LEXIS 203210 *59 (October 30, 2020)

[143] Rec. Doc. 40 ¶68

[144] *Kitchen v. Dallas Cnty., Tex.* 759 F. 3d 468, 480 (5th Cir. 2014)

[145] *Robinson v. Meeks,* Civil Action No. 3:17-cv-606, 2018 U.S. Dist. LEXIS 45204 *39 (March 20, 2018)

[146] Rec. Doc. 40 ¶33,37

"a few feet away." Further, Plaintiff added the allegation that "the pepper-spraying-plus-choking sequence lasted minutes."[147] As this Court noted in its ruling, the Sheriff Defendants' alleged use of excessive force should be considered in two parts.[148] Plaintiff does not allege facts to show that Deputy Hyde would have had sufficient time or the ability to prevent Deputy Braxton's spraying of pepper spray from a few feet away. This Court found that the duration of the spray was brief.[149] Based upon the facts alleged, Plaintiff has not shown that Deputy Hyde would have had a reasonable opportunity to intercede and prevent Deputy Braxton from spraying Plaintiff with mace.

Further, Plaintiff has not alleged facts to show that Deputy Hyde had the opportunity to prevent Deputy Braxton from holding him up against the railing until he allegedly lost consciousness. Plaintiff alleges that both incidents (the mace and the incident on the walking ramp) lasted minutes. However, the video incorporated into the Second Amended Complaint shows that the time period that Deputy Braxton was holding Plaintiff up against the metal railing lasted only 40 seconds. Further, during this time period, the video and still photos incorporated in the complaint show that Deputy Hyde was bending or kneeling down attempting to place leg shackles on Plaintiff. Deputy Hyde would not have had a reasonable opportunity to intercede to prevent Deputy Braxton from holding Plaintiff against the metal railing until he allegedly loss consciousness. Further, based on the video and allegations it is not even clear that Deputy Hyde saw how Deputy Braxton was holding Plaintiff such that he would know that his rights were allegedly being violated.

---

[147] Rec. Doc. 40 ¶68
[148] Rec. Doc. 39 page 9
[149] Rec. Doc. 39 page 10

In addition, Deputy Hyde is entitled to qualified immunity. Plaintiff has the burden to demonstrate that the law was clearly established as of the date of the encounter, April 2020, that any reasonable officer would have known that the Constitution required them to intervene.[150] If Plaintiff fails to do so, this Court should dismiss Plaintiff's bystander liability claims for this reason as well.

### F.  Plaintiff fails to state a claim against the Sheriff Defendants based on Article 1, Section 5 of the Louisiana Constitution.

Because the Court found that Plaintiff had failed to allege sufficient facts to support his federal law claims, the Court deferred consideration of Plaintiff's state law claims pending Plaintiff's ability to establish federal claims based on the current procedural posture of the case.[151]

Plaintiff repeats the allegations he made in his First Amended Complaint related to this claim in his Second Amended Complaint.  Plaintiff alleges that "Defendants' actions in conducting and causing the seizing, detaining, and excessive force on Mr. Skinner as described above violated his rights under Article 1, Section 5 of Louisiana's constitution."[152] Article 1 Section 5 of the Louisiana Constitution provides "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."[153] Plaintiff does not state a claim pursuant to Article 1 Section 5 of the Louisiana Constitution because Plaintiff's claims are not based on invasion of privacy, or unreasonable search or seizure.

While the Louisiana Supreme Court has not recognized state constitutional claims based on excessive force, the Western District of Louisiana Federal District Court has noted that privacy

---

[150] *Whitley v. Hanna,* 726 F. 3d 631, 647 n. 13 (5th Cir. 2013)
[151] Rec. Doc. 39 pages 13, 14
[152] Rec. Doc.40 ¶70
[153] Article 1, Section 5, of the Louisiana Constitution of 1974

principles embodied in the Fourth Amendment have been incorporated into Article I, Section 5 of the Louisiana Constitution.[154]

However, Plaintiff does not make claims based on invasion of privacy. Plaintiff does not allege any facts to show that he was unreasonably seized or detained. This Court has held that the Eighth Amendment, not the Fourth Amendment, applies because Plaintiff was being detained pursuant to a judgment of conviction and the force at issue occurred in the facility and was in response to a prison disturbance.[155]

Further, there is nothing in the cases out of the Western District to suggest that Article I, Section 5 of the Louisiana Constitution should be extended beyond Fourth Amendment excessive force claims based on unreasonable seizures to claims by a convicted inmate that excessive force was used on him in a correctional facility setting. As explained by the Court in its ruling, the Fourth Amendment is not applicable to Plaintiff's claims in this case because the force was not used during an arrest or seizure but while Plaintiff was housed in a correctional setting as a convicted inmate. Therefore, Plaintiff fails to state a claim against the defendants for excessive force pursuant to Article 1 Section 5 of the Louisiana Constitution.

### G.  Plaintiff fails to state a State Law claim against the Sheriff Defendants based on Assault and Battery.

Plaintiff repeats the allegations he made in his First Amended Complaint related to this claim in his Second Amended Complaint. Plaintiff alleges that Defendants' use of force against Bradford Skinner constituted assault and battery.[156]  Plaintiff alleges that "[i]t was an assault because it put Mr. Skinner in immediate apprehension of a non-consensual harmful touching."[157]

---

[154] *Tucker v. City of Shreveport,* 2019 WL 961993 (W.D. La. 2/27/2019) citing *Shepherd v. City of Shreveport*, No. 14-2623, 2018 WL 1513679, at *10 (W.D. La. Mar. 27, 2018) (citing *Todd v. City of Natchitoches*, 238 F. Supp. 793, 798–99 (W.D. La. 2002), *appeal dismissed on other grounds*, 72 F. App'x 969).
[155] Rec. Doc. 39 page 7
[156] Rec. Doc. 40 ¶72
[157] Rec. Doc. 40 ¶73

Plaintiff alleges that "[i]t was a battery because Defendants completed a non-consensual harmful touching."[158]

Under Louisiana law, the use of force by law enforcement officers is scrutinized by considering the "reasonable force" standard established by La. C. Cr. P. art. 220.[159] "Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment."[160] "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages."[161] The Court in *Penn* applied this test to plaintiff's state law claims for excessive force against a prison guard, Deputy Mayo, and found that given the circumstances and plaintiff's behavior at the jail, the force applied constituted ordinarily protected use of force. In *Penn,* the arresting police department alerted the officers at the Parish jail that the officers were in route with a combative prisoner. Deputy Mayo applied two bursts of the electric shield to control combative and resistive behavior after several unsuccessful vocal orders.

In this case, Plaintiff has not alleged sufficient facts to show that any use of force used in this case by Deputy Hyde or Deputy Braxton was not reasonable under the circumstances. The only specific allegation against Deputy Hyde is that he was present at the scene when mace was used and he participated in forcibly pushing Mr. Skinner up against a metal railing as leg shackles

---

[158] Rec. Doc. 40 ¶74
[159] *Penn v. St. Tammany Parish Sheriff's Office,* 2002-0893, (La App. 1ˢᵗ Cir. 4/2/03),843 So. 2d 1157
[160] *Id* at page 1161 citing *Kyle v. City of New Orleans,* 353 So. 2d 969, 973 (La. 1977).
[161] *Id* at 1161 citing *Ross v. Sheriff of Lafourche Parish,* 479 So. 2d 506, 511 (La. App. 1ˢᵗ Cir. 1985)

were being placed on him and that he helped carry Plaintiff off the walking ramp after he lost consciousness.[162]

As to the claims against Deputy Braxton related to the mace incident, Plaintiff alleges that shortly after he requested medical attention form Work Release Defendant Martin, Deputy Braxton arrived.[163] Plaintiff alleges that he was placed in handcuffs by Defendant Martin.[164] Plaintiff alleges that while he was in handcuffs, Deputy Braxton sprayed him in the face with mace.[165] Plaintiff adds the allegation that Mr. Skinner was coughing because he was sick; but he was not coughing at anyone, nor did he spit at anyone.[166] This new allegation is directly contrary to Plaintiff's admission in his Opposition, as noted by this Court, that he was coughing and spitting towards the deputies prior to Deputy Braxton's use of mace.[167] Plaintiff also admitted in his Opposition that he complied and stopped coughing and spitting after being pepper-sprayed by Braxton to get him to stop.[168] These admissions are clearly contrary to Plaintiff's new allegations that he was coughing because he was sick and he was not coughing at anyone and should not be considered by this Court as asserted above.

Plaintiff claims that Defendants Braxton, Hyde and Martin all participated in forcibly pushing Plaintiff up against a metal railing as they placed leg shackles on him.[169] Plaintiff alleges that simultaneously, Deputy Braxton held him by the neck and bent him over the railing face first, pushing his head down with one hand.[170] Plaintiff alleges that he was pinned against the metal

---

[162] Rec. Doc.40 ¶¶33, 42, 51
[163] Rec. Doc. 40 ¶33
[164] Rec. Doc. 40 ¶34
[165] Rec. Doc. 40 ¶37
[166] Rec. Doc. 40 ¶36
[167] Rec. Doc. 28 page 7
[168] Rec. Doc. 28 page 7
[169] Rec. Doc. 40 ¶42
[170] Rec. Doc. 40¶43

railing until he lost consciousness.[171] Plaintiff alleges that after he lost consciousness, the Defendants lifted him so that his feet were not touching the ground and flung him onto the ramp.[172] Plaintiff alleges that the video shows that none of the Defendants checked him for a pulse and they picked him up by his legs and arms and carried him off the walking ramp.[173] Plaintiff admits that the incident at the Work Release facility was in full view of other inmates who were filming and commenting on the disturbance.[174]

Given the fact that Plaintiff was causing a disturbance in full view of other unrestrained inmates, and he was spitting and coughing toward Deputy Braxton and Deputy Hyde; Deputy Braxton was holding Plaintiff against the rail so that shackles could be placed on his legs; the force applied constituted ordinarily protected use of force. Plaintiff's State Law claims for assault and battery against the Sheriff Defendants should be dismissed with prejudice.

## IV.    CONCLUSION

For all of the foregoing reasons, Sheriff Defendants request that this Court dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

s/ Catherine S. St. Pierre
MARY G. ERLINGSON (#19562)
CATHERINE S. ST. PIERRE (#18419)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone: (225) 218-4446
Facsimile: (225) 246-2876

---

[171] Rec. Doc. 40 ¶45
[172] Rec. Doc. 40 ¶47
[173] Rec. Doc. 40 ¶¶50, 51
[174] Rec. Doc. 40 ¶¶ 39 and 49

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2021 a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsel of record.

Baton Rouge, Louisiana, this 23rd day of August 2021.

/s/ *Catherine St. Pierre*
Catherine S. St. Pierre