UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRADFORD SKINNER                                                                                  CIVIL ACTION

VERSUS                                                                                                    20-595-SDD-SDJ

SID J. GAUTREAUX, III, ET AL.

### RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, Sheriff's Deputy Demarcus Braxton ("Braxton"), East Baton Rouge Sheriff Sid J. Gautreaux ("Gautreaux"), and Sheriff's Deputy Rudolph Hyde ("Hyde") ("the Sheriff Defendants"). Plaintiff Bradford Skinner ("Plaintiff") filed an *Opposition*,[2] to which the Sheriff Defendants filed a *Reply*.[3] For the following reasons, the Sheriff Defendants' *Motion*[4] shall be granted in part and denied in part. Defendants Louisiana Workforce, LLC and Luther Martin ("Martin") have not moved to dismiss.

### I.   BACKGROUND

This is an excessive force case. The Court provided the relevant allegations in a prior *Ruling*.[5] Plaintiff alleges that on April 3, 2020, while an inmate in the East Baton Rouge Work Release facility,[6] he requested medical attention because he was concerned that he had contracted COVID-19; he did not receive medical attention.[7] He requested medical attention again on the following day, but that request was not met.[8]

---

[1] Rec. Doc. No. 45.
[2] Rec. Doc. No. 48.
[3] Rec. Doc. No. 51.
[4] Rec. Doc. No. 45.
[5] *See* Rec. Doc. No. 39.
[6] Which Louisiana Workforce, LLC operates.
[7] Rec. Doc. No. 39, p. 1.
[8] *Id*. at p. 2.

After the second request, Deputies Braxton and Hyde responded from East Baton Rouge Parish Prison with Martin, a Louisiana Workforce, LLC employee, providing assistance.[9] According to Plaintiff, Martin handcuffed Plaintiff.[10] While Plaintiff was handcuffed and coughing, Braxton pepper-sprayed him in the face, and then Braxton forcibly bent Plaintiff over a railing until he lost consciousness.[11] After Plaintiff lost consciousness, the officers grabbed Plaintiff's legs and arms and carried him away.[12] Braxton authored a disciplinary report charging Plaintiff with "Aggravated Disobedience."[13]

Plaintiff asserts the following claims against all Defendants except Sheriff Gautreaux: an excessive force claim under the Fourth or Eighth Amendment, as appropriate; a claim for the violation of Article I, Section 5 of the Louisiana Constitution; and state law claims for assault and battery.[14] Plaintiff asserts a claim for municipal liability under *Monell*,[15] a failure to train and supervise claim, and a claim for vicarious liability against Louisiana Workforce, LLC.[16] Plaintiff asserts a vicarious liability claim against Sheriff Gautreaux.[17] Plaintiff seeks declaratory relief, compensatory damages, special damages, costs and attorney's fees.[18] The Sheriff Defendants assert qualified immunity.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss

---

[9] *Id.*
[10] Rec. Doc. No. 40, p. 5.
[11] *Id*. at 5–6.
[12] See Rec. Doc. No. 40, p. 8–10.
[13] *Id*. at 11.
[14] *Id*. at 12–13.
[15] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).
[16] Rec. Doc. No. 19, p. 13–14.
[17] Rec. Doc. No. 40, p. 14.
[18] *Id*. at 14–15.

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[25] "Furthermore, while the court must accept well-pleaded facts as true,

---

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[24] *Id*.
[25] *Id*.

it will not 'strain to find inferences favorable to the plaintiff.'"[26] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[27]

Before the Court can reach the substance of this *Motion*, the Court must determine whether it will credit Plaintiff's clarification in the *Second Amended Complaint* that he was not coughing or spitting at anyone prior to Braxton's pepper-spraying him.[28] In its prior *Ruling* the Court "assume[d] for the purposes of [that] *Motion* that Plaintiff was coughing and spitting at people before being maced."[29] The Court did so because Plaintiff relied in part on the disciplinary report that Braxton authored which included the statement that Plaintiff had been coughing and spitting towards the officers.[30] Plaintiff relied on that report to support his allegation that he exhibited only passive resistance after being pepper-sprayed and to attempt to show that the *First Amended Complaint* and disciplinary report established a consistent timeline.[31] The Court determined that it furthered the policy behind qualified immunity to consider the portion of the disciplinary report quoted in Plaintiff's *Opposition*[32] because doing so would resolve the qualified immunity question at the earliest possible stage of this litigation.[33] Now, however, Plaintiff amended the

---

[26] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[27] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[28] Rec. Doc. No. 40, p. 6.
[29] Rec. Doc. No. 39, p. 5.
[30] Rec. Doc. No. 28, p. 7.
[31] *Id*.
[32] "Defendants' Disciplinary Report agrees; it says that after Braxton maced Skinner 'in the facial area', Plaintiff 'complied and stopped spitting and coughing towards us. I ordered Skinner to stand up he refused my orders.'" Rec. Doc. No. 28, p. 7 (quoting Rec. Doc. No. 27-2).
[33] Rec. Doc. No. 39, p. 5.

*Second Amended Complaint* to allege that he was neither coughing nor spitting at anyone, but Defendants urge that Plaintiff should be bound by his prior statement.

The Court will accept Plaintiff's amendment for two reasons. First, at the 12(b)(6) stage, the facts as alleged in the complaint must be taken as true, and it appears that Plaintiff's intention in quoting the disciplinary report in his prior *Opposition* was to support his assertion that he exhibited only passive resistance after being pepper-sprayed—not as an admission or allegation as to the direction in which he was coughing and spitting. Second, the Court expressly assumed that Plaintiff was coughing and spitting at people solely for the resolution of the prior *Motion* because of the ambiguity as to what Plaintiff hoped to accomplish by quoting the disciplinary report. It is now clear that Plaintiff challenges at least some of the contents of the disciplinary report, and at this stage, his assertions are entitled to a presumption of truth.

In the same vein, the Sheriff Defendants urge that Plaintiff has admitted that the deputies ordered Plaintiff to stop coughing before Braxton pepper-sprayed him.[34] The Sheriff Defendants cite several portions of Plaintiff's filings that they argue constitute an admission, but the most glaring is in the factual recitation in Plaintiff's operative *Opposition*: "Sheriff's Office deputies responded by handcuffing [Plaintiff], and then pepper-spraying him in the face *when he could not stop coughing on command*."[35] The obvious implication is that one of the deputies ordered Plaintiff to stop coughing prior to Plaintiff being pepper-sprayed. Notably, Plaintiff included this detail in his factual recitation after the Sheriff Defendants asserted in their operative *Motion to Dismiss* that "Plaintiff's admissions in his [prior] Opposition and his allegations in his Second Amended Complaint

---

[34] Rec. Doc. No. 33, p. 14–15.
[35] Rec. Doc. No. 48, p. 1 (emphasis added).

support the fact that he was ordered to stop coughing, he disobeyed the order and that after he was sprayed with pepper spray, Plaintiff complied and stopped coughing."[36] As such, the parties seem to agree that Plaintiff was ordered to stop coughing. For the same reasons provided in the Court's prior *Ruling*,[37] the Court will assume for the purposes of this *Ruling* that Plaintiff was coughing and was ordered to cease coughing prior to being pepper-sprayed.[38]

In the *Second Amended Complaint*, Plaintiff referenced and included a link to a video of the incident. He urges the Court to consider the video in conjunction with this *Motion*. Because the video is referenced in the *Second Amended Complaint* and incorporated within it, the Court has considered the video. However, the events depicted in the video are subject to interpretation, and that interpretation is the province of the fact-finder. Thus, the video does not affect the Court's analysis.

### B. Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[39] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[40]

---

[36] Rec. Doc. No. 45-1, p. 14–15.
[37] Rec. Doc. No. 39, p. 5.
[38] *Williams v. State,* 2016 WL 754629, at *2 (M.D. La. Feb. 24, 2016) (noting courts' "vast discretion to treat statements in memoranda as binding judicial admissions of fact.").
[39] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[40] 42 U.S.C. § 1983.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[41]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[42] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[43]

### C.  Qualified Immunity

Public officials are entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated an actual constitutional or federal statutory right that is clearly established under existing law, and (2) if so, that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of that conduct.[44] Therefore, to survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts, which, taken as true, show that the defendant violated his constitutional rights which were clearly established at the time of the violation. If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated.[45] The protections afforded by

---

[41] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[42] See *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[43] See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).
[44] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011); *Hart v. Tex. Dep't of Criminal Justice*, 106 F. App'x 244, 248 (5th Cir. 2004).
[45] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law.[46]

### D. Excessive Force

"In evaluating excessive force claims under the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[47] Although "'[t]he focus of this standard is on the detention facility official's subjective intent to punish,' intent is determined by reference to the well-known *Hudson* factors—'the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'"[48] "The amount of force used must be more than *de minimis*, provided that the use of force is not of a sort repugnant to the conscience of mankind."[49] "[C]ourts frequently [find] constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[50]

Plaintiff names all Defendants except Sheriff Gautreaux in the excessive force count.[51] Since Martin and Louisiana Workforce, LLC have not moved to dismiss, the Court analyzes the excessive force claims only as to movants Hyde and Braxton. As in its prior *Ruling*, the Court will analyze Plaintiff's excessive force claim in two parts: the pepper-spraying and the incident along the walkway.

---

[46] *Id.* at 639.
[47] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).
[48] *Id.* at 452–53 (cleaned up).
[49] *Id.* at 453 (cleaned up).
[50] *Id.* at 454.
[51] Rec. Doc. No. 40, p. 11–12.

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis.[52]

The Court begins with the clearly established prong. "The relevant question is whether a reasonable officer could have believed his or her conduct to be lawful, in light of clearly established law and the information the officers possessed."[53] Plaintiff must point "to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law."[54] The Supreme Court does not "require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."[55] The Fifth Circuit has suggested that the existing precedent must be either a Supreme Court or Fifth Circuit case or a case from the district courts of this circuit.[56]

Fifth Circuit precedent provides that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[57] "[For example], the court has held that use of force is excessive when an officer has punched a handcuffed prisoner in the face…."[58] The Court must consider whether

---

[52] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[53] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641, (1987)) (cleaned up).
[54] *Id*.
[55] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (cleaned up).
[56] *Keller*, 952 F.3d at 225 ("In turn, there is no binding Supreme Court or Fifth Circuit precedent to anchor our de novo review of whether a similarly situated officer violated a constitutional right acting under similar circumstances."); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("Plaintiffs have not referenced a single case in either the district courts or the court of appeals of this circuit in which state actors were held liable for private harm caused to an individual after he was released from custody.").
[57] *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016); *Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018).
[58] *Waddleton*, 750 F. App'x at 256.

Document Number: 70522

Plaintiff has adequately alleged that Braxton violated his constitutional rights and, if so, whether that violation fits within the clearly established right.

In *Taylor v. Riojas*,[59] the Supreme Court vacated the Fifth Circuit's grant of qualified immunity where prison guards kept an inmate in a cell covered in a "massive amount of feces" and a second cell that was "frigidly cold" and "was equipped with only a clogged drain in the floor to dispose of bodily wastes."[60] The Court concluded that while there was not a case directly on point, "[c]onfronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution."[61] *Taylor* is instructive.

While the facts of this case are not as egregious as those in *Taylor*, the policies underlying *Taylor* are helpful here. *Taylor* stands for the proposition that a corrections officer's actions can be so egregious that they are obviously unconstitutional. Thus, under *Taylor*, a corrections officer should be denied qualified immunity when he commits an obvious constitutional violation even if clearly established law is not directly on point.

The core inquiry in Eighth Amendment excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[62] At this stage, Plaintiff need only allege facts that plausibly indicate that Braxton acted "maliciously and sadistically to cause harm."[63] The force Braxton used (pepper-spraying) was not conducive to gaining compliance with the deputies' orders to stop coughing and spitting. Indeed, it is far more likely that pepper-

---

[59] 141 S. Ct. 52, 53 (2020).
[60] *Id.*
[61] *Id.* at 54.
[62] *Cowart*, 837 F.3d at 452.
[63] *Id.*

spraying Plaintiff would exacerbate the coughing and spitting. Braxton's alleged behavior was at least counterintuitive and arguably irrational, which calls into question whether his intent in pepper-spraying Plaintiff was to restore discipline. The Court is required to draw reasonable inferences in favor of the Plaintiff at this stage. Because the use of force in this case could only tend to exacerbate Plaintiff's complained-of actions, the Court may draw the inference that the force was not applied to restore prison discipline. Hence, the Court concludes that Plaintiff has adequately alleged that the pepper-spray was administered maliciously or sadistically to cause harm. Therefore, Plaintiff has adequately alleged a constitutional violation.[64] Because Plaintiff was restrained when the use of force occurred, the constitutional violation fits the clearly established law that corrections officers may not use gratuitous force on a restrained prisoner. Based on the allegations in the *Second Amended Complaint*, Braxton is not entitled to qualified immunity.

As the Court stated in its prior *Ruling*, Plaintiff has not alleged that Hyde did anything at this point in the encounter. Therefore, Plaintiff's excessive force claim against Hyde as to the pepper-spraying incident fails as pled.

The Court turns to the events on the walking ramp. According to the *Second Amended Complaint*, the following sequence of events occurred:

- Braxton pepper-sprayed Plaintiff
- Plaintiff stood up and remained standing on the walking ramp

---

[64] Under the allegations of the *First Amended Complaint*, the Court evaluated Braxton's use of pepper-spray to stop Plaintiff's coughing and spitting at people. The allegation now before the Court, which must be taken as true, has changed. Plaintiff now alleges that "he was not coughing at anyone." Rec. Doc. No. 40, p. 6. If Plaintiff was coughing and spitting at people, the use of pepper-spray to stop Plaintiff from directing his bodily fluids at people is arguably in furtherance of restoring safety and order. While Plaintiff would continue to cough and spit, it would be far more difficult for him to cough and spit in a particular direction. However, the use of pepper-spray to force Plaintiff to stop coughing and spitting in general is altogether different.

- While Plaintiff stood on the walking ramp, recently pepper-sprayed and currently handcuffed, Braxton grabbed him by the throat

- Hyde, Martin, and Braxton forced Plaintiff up against a metal railing as they placed leg shackles on him

- Simultaneously, Braxton held Plaintiff by the neck and bent him over the railing face first

- Sometime later, Plaintiff lost consciousness and "Defendants lifted [Plaintiff] so that his feet were not touching the ground, and then flung him onto the ramp"[65]

Read in the light most favorable to the Plaintiff, the *Second Amended Complaint* alleges that Plaintiff was placed in leg shackles (while wearing handcuffs), and then Braxton continued to put pressure on Plaintiff's neck until he passed out.

As a principle of clearly established law, Plaintiff points to Fifth Circuit precedent that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[66] "[For example], the court has held that use of force is excessive when an officer has punched a handcuffed prisoner in the face…."[67] Now, the Court must ask whether Braxton violated Plaintiff's constitutional rights, and if so, whether Braxton's actions were objectively unreasonable in light of the clearly established law above.

The Fifth Circuit recently stated the framework for analyzing excessive force claims under the Eighth Amendment:

> In evaluating excessive force claims under the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Though the focus of this standard is on the detention facility official's subjective intent to punish, intent is determined by reference to the well-known *Hudson* factors—the extent of injury suffered, the need for application of force, the

---

[65] Rec. Doc. No. 40, p. 6–10.
[66] *Cowart*, 837 F.3d at 454; *Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018).
[67] *Waddleton*, 750 F. App'x at 256.

relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. The amount of force used must be more than de minimis provided that the use of force is not of a sort repugnant to the conscience of mankind. A plaintiff need not show significant injury, although the extent of the injury may supply insight as to the amount of force applied.[68]

Plaintiff has adequately alleged that Braxton violated his constitutional rights. He alleges several injuries, including: neck pain, throat pain, back pain, chest pain, difficulty breathing without coughing, and emotional distress. He also alleges that he was coughing up blood on the day after the incident. The severity of these injuries is not alleged, so this factor is neutral. There was some need to apply force in order to place the leg shackles on Plaintiff. However, that need disappeared once the leg shackles were secured, but the force continued. Therefore, this factor could support a finding of excessive force. The threat perceived by the officials factor is neutral. While Plaintiff was in a secure facility, Plaintiff also alleges that there were numerous, unsecured prisoners in the area who were yelling at the deputies. Therefore, it was reasonable for the deputies to seek to restrain and remove Plaintiff. The "efforts made to temper the severity of the response" factor weighs in favor of Plaintiff. Taking the facts in the *Second Amended Complaint* as true, Braxton should have ceased choking Plaintiff as soon as Plaintiff was shackled. But allegedly he did not.

The clearly established law that Plaintiff proffers (use of force is impermissible against a subdued or restrained prisoner) fits the facts here. Braxton allegedly continued to use force after Plaintiff was restrained, which a jury could find to be excessive force. Therefore, Plaintiff has stated a claim for excessive force against Braxton for his injuries

---

[68] *Cowart*, 837 F.3d at 452–53 (cleaned up).

Document Number: 70522

sustained during the period after which he was restrained when Braxton continued to use force. Braxton is not entitled to qualified immunity.

Plaintiff did not add any allegations that bear on Hyde's actions during the events on the walking ramp. As such, the Court's prior ruling that Hyde did not violate Plaintiff's constitutional rights remains valid. The Court now considers Plaintiff's bystander liability claim against Hyde.

### E.   Bystander Liability

To state a bystander liability claim under the Eighth Amendment, a plaintiff must allege that: (1) the officer knew that a fellow officer was violating the plaintiff's rights; (2) the officer had a reasonable opportunity to prevent the harm; and (3) the officer chose not to act.[69] A plaintiff must establish that the officer "knows that a fellow officer is violating an individual's constitutional rights."[70] However, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability."[71] The officer must have a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[72] "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer acquiesce[d] in the alleged constitutional violation."[73] "In making the determination of whether or not an officer

---

[69] *Cardona v. Taylor*, 828 F. App'x 198, 203 (5th Cir. 2020) (citing *Kitchen v. Dallas Cty.*, 759 F.3d 468, 480 (5th Cir. 2014), abrogated on other grounds by *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).
[70] *See McDonald v. McClelland*, 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam).
[71] *Vasquez v. Chacon*, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell*, 147 F. Supp. 2d at 507); see also *Brown v. Wilkinson Cty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (per curiam) ("[plaintiff] concedes that he was harmed by three inmates and that an officer's mere presence, without more, does not give rise to a bystander liability claim.")
[72] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 2013 (citations omitted).
[73] *Whitley v. Hannah*, 726 F.3d 631, 647 (5th Cir. 2013) (citations omitted).

acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer."[74]

Plaintiff's allegations as to Hyde's actions are scant. He alleges that Hyde was present for the pepper-spraying[75] and helped push Plaintiff against the railing as Hyde, Martin, and Braxton put leg shackles on him.[76] In sum, per the *Second Amended Complaint*, "Hyde and Luther's proximity (a few feet away), ability to intervene (the pepper-spraying-plus-choking sequence lasted minutes), and failure to act (they were active participants rather than an objector), pleads a claim for bystander liability for Hyde and Martin."[77]

Plaintiff argues that the instant fact pattern, "holding a suspect while another officer uses excessive force against them," typically survives a motion to dismiss.[78] He cites *Taplette v. LeBlanc*,[79] a case from this District, in support. The Sheriff Defendants argue that Plaintiff's argument is fatally flawed because Plaintiff fails to allege how long the incident occurred, and *Taplette* is distinguishable.[80]

Plaintiff's bystander liability claim fails as pled. Plaintiff fails to allege that Hyde had an opportunity to intervene before Braxton pepper-sprayed Plaintiff because he does not allege that Hyde had any knowledge that Braxton was about to pepper-spray Plaintiff. Likewise, Plaintiff fails to allege the length of time that Braxton continued to use force after Plaintiff had been restrained. Therefore, he has not alleged that Braxton had an

---

[74] *Garrett v. Crawford*, 2016 WL 843391, at *9 (W.D. Tx. March 1, 2016).
[75] Rec. Doc. No. 40, p. 5.
[76] *Id*. at 8.
[77] *Id*. at 12.
[78] Rec. Doc. No. 48, p. 7.
[79] 2019 WL 1560444 (M.D. La. Apr. 10, 2019).
[80] Rec. Doc. No. 51, p. 13–14

ability to intervene during that time. *Taplette* is distinguishable. The *Taplette* court summarized the allegations as follows:

> After numerous attempts by [the plaintiff] to explain his valid fears to Sgt. White and several refusals by [the plaintiff] of Sgt. White's orders to exit his cell, [the plaintiff] was subsequently forcefully placed in full correctional restraints, including leg chains, waist chains and black box hand restraints and then forcefully thrown to the ground and beaten by [Unidentified Corrections Officer 1], [Unidentified Corrections Officer 2] and Sgt. White, with Sgt. White placing his knee in the side of the plaintiff's] face, with his full force and weight, while [Unidentified Corrections Officer 1] and [Unidentified Corrections Officer 2] continued to beat [the plaintiff], all of which should have been captured by tier surveillance cameras.[81]

*Taplette* is distinguishable because Sgt. White allegedly kneeled on the plaintiff's face after the unconstitutional beating of the plaintiff began. Therefore, Sgt. White had the opportunity to intervene and chose not to. In contrast, Hyde's actions began as helping to effect a constitutional restraint of Plaintiff. The *Second Amended Complaint* does not contain sufficient allegations to determine whether Hyde had the opportunity to react to the situation once it took on an unconstitutional character. Therefore, Plaintiff has failed to plead a claim for bystander liability against Hyde, and that claim is dismissed with prejudice.

### F. Claim Under Violation of Article 1, Section 5 of the Louisiana Constitution

Article 1, Section 5 of the Louisiana Constitution provides:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

---

[81] *Taplette*, 2019 WL 1560444 at *2.

It is the state law corollary to the Fourth Amendment to the United States Constitution. The Court has already ruled that the Eighth Amendment applies in this case, so Plaintiff's claim under Article 1, Section 5 of the Louisiana Constitution is dismissed with prejudice.[82] As Plaintiff points out, Article 1, Section 20 of the Louisiana State Constitution parallels the Eighth Amendment to the United States Constitution. Plaintiff appears to invite the Court to analyze his Section 5 claim under Section 20.[83] The Court will not analyze claims that have not been pled.

### G. State Law Claims

In addition to his claims under § 1983, Plaintiff also brings state law assault and battery claims against the Sheriff Defendants.[84] "Under Louisiana law, a battery is defined as an intentional harmful or offensive contact with a person."[85] The plaintiff must allege that the person accused of battery "intended to inflict an offensive contact without the plaintiff's consent."[86] "Assault is the imminent threat of a battery."[87] The plaintiff must allege that they were placed in "reasonable apprehension of harmful or offensive contact."[88] Corrections officers cannot be held liable for use of force, unless that force is excessive.[89] "Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a federal constitutional claim—reasonableness under the

---

[82] Rec. Doc. No. 39, p. 7. Likewise, Plaintiff's Fourth Amendment claims are dismissed with prejudice.
[83] "The Second Amended Complaint pleads the Fourth Amendment and Article 1, Section 5 of the Louisiana Constitution for the purpose of preserving the issue, but Plaintiff expects that the analysis here will track the federal Eighth Amendment and Article 1, Section 20, of the state constitution." Rec. Doc. No. 48, p. 8.
[84] Rec. Doc. No. 19, p. 13–14.
[85] *Fontenot v. Gusman*, 2012 WL 5196426, at *16 (E.D. La. Oct. 18, 2012) (citing *Doss v. Morris*, 86 Fed. App'x. 25, 27–28 (5th Cir.2004)).
[86] *Id.*
[87] Doss, 86 F. App'x at 28.
[88] Fontenot, 2012 WL 5196426, at *17.
[89] *Id.*

circumstances."[90] Louisiana's state law qualified immunity is "[i]dentical to the federal standard…."[91]

The analysis of Plaintiff's tort claims tracks the analysis of his federal § 1983 claims. In sum, Plaintiff has adequately alleged claims for assault and battery against Braxton, and Braxton is not entitled to qualified immunity for those claims. Plaintiff has not pled a claim for assault or battery as to Hyde.

### H.   Vicarious Liability

Sheriff Gautreaux may not be held liable under a vicarious liability theory for the actions of his employees that violate § 1983. Municipal entities, such as the East Baton Rouge Sheriff's Office may only be held liable under *Monell* and its progeny, and Plaintiff has waived his constitutional claims against Gautreaux.[92] The Sheriff Defendant's only argument as to Plaintiff's vicarious liability claim for the tort causes of action is "if this Court rules that Plaintiff has failed to state a State Law tort claim against Deputy Braxton and Deputy Hyde, then Plaintiff's Count Five *respondeat superior* (vicarious liability) liability claims should also be dismissed against Sheriff Gautreaux."[93] The Court held above that Plaintiff adequately stated tort law claims against Braxton. Therefore, the Court will not dismiss Plaintiff's vicarious liability claim against Sheriff Gautreaux as to Braxton's actions. The claim as to Hyde's actions is dismissed with prejudice.

---

[90] *Escort v. Miles*, 2018 WL 3580656, at *8 (W.D. La. July 25, 2018)
[91] *Id. See also*, *Perrilloux v. City of Kenner*, 2009 WL 10680057, at *3 (E.D. La. Oct. 9, 2009).
[92] *Monnell v. Dept. of Social Servs. of New York*, 436 US 658, 691 (1978); Rec. Doc. 41, p. 1.
[93] Rec. Doc. No. 45-1, p. 6.

### III.   CONCLUSION

The Sheriff Defendants' *Motion to Dismiss*[94] is granted in part and denied in part. The following claims are dismissed with prejudice: all claims against Hyde; the claim under Article 1, Section 5 of the Louisiana Constitution; and the vicarious liability claim against Sheriff Gautreaux as to Hyde's actions. The following claims survive the Sheriff Defendants' *Motion*: all claims against Louisiana Workforce LLC and Martin (which the Sheriff Defendants did not move to dismiss), the excessive force claim against Braxton, the assault and battery claims as to Braxton, and the vicarious liability claim against Sheriff Gautreaux as to assault and battery claims against Braxton.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 24, 2022</u>.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[94] Rec. Doc. No. 45.